173 So. 101

# RAY v. CANAL BANK & TRUST CO.

## No. 33876.

Feb. 1, 1937.

Rehearing Denied March 1, 1937.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellant.

Dufour, St. Paul, Levy & Miceli and Dart & Dart, all of New Orleans, for appellee.

ROGERS, Justice.

George B. Ray sued to recover $9,540.13 from the Canal Bank & Trust Company. While the suit was pending, the bank went into liquidation and its liquidators were

made parties defendant. Subsequently, plaintiff, by supplemental petition, claimed a lien and privilege under Act No. 63 of 1926. After a trial on the merits, the court below dismissed the suit, and plaintiff has appealed from the judgment.

The facts, which are not disputed, are these:

On January 25, 1929, George B. Ray, of Wichita Falls, Tex., drew a draft for $11,970.53 on Fontaine Martin & Co., of New Orleans. The draft was indorsed in blank by Ray and deposited for collection by him in the Security National Bank of Wichita Falls, which sent it to the First National Bank of Fort Worth, Tex. The draft was received by the Canal Bank & Trust Company from the First National Bank of Fort Worth, on the morning of Monday, January 28, 1929, and on that day between 12:30 o'clock and 1 o'clock p. m. was delivered by a runner of the Canal Bank to the office of Fontaine Martin & Co. Shortly after 2 o'clock p. m. on the same day the runner returned to the office of Martin & Co. and was given the company's check for $12,032.18 drawn on the Canal Bank. The amount of the check represented the aggregate amount of all the drafts which had been left by the bank's runner at the office of Martin & Co. The runner on receiving the check, in accordance with the prevailing custom, stamped on the face of the draft with a rubber stamp the word "paid," and left the draft at the office of Martin & Co.

The bank's runner then brought the check to the main office of the bank and delivered it to the collection teller, who placed on it with a rubber stamp the words, "Collection Department Canal Bank & Trust Company, January 28th, 1929," the purpose of which was to identify the check. The teller did not mark the check paid and, as a matter of fact, the check was never marked paid by the bank.

When the bank's collection teller received the check, he was not informed as to the condition of the account of Martin & Co., and on the following morning the bookkeeper of the bank, to whom he had sent the check for verification and payment, advised him that the check was "N.S.F." and that he was throwing it out.

The matter was then referred to an assistant cashier of the bank, and he telephoned the cashier of Martin & Co., informing him that the account of his company was overdrawn, and that the overdraft would have to be covered before 1:30 o'clock p. m., or the checks of Martin & Co. would be returned for the want of sufficient funds with which to honor them. The cashier of Martin & Co. stated that the matter would receive his attention. When the bank's official returned from lunch about 1:30 o'clock p. m. and found that the overdraft of Martin & Co. had not been made good, he again telephoned the cashier of the company, and was then informed that Martin & Co. could not cover the overdraft. The bank official then took all of the checks drawn by Martin & Co., which were given for drafts presented to that company, went over to the office of Martin & Co., returned the checks and got back the drafts. He thereupon scratched off the drafts the notations "Paid" placed thereon by the bank's runner, brought the

.drafts back to the bank, and gave them to the collection teller to be charged back against the several accounts.

About 3 o'clock p. m. on January 29, 1929, after the drafts were returned to the bank's collection teller, he telegraphed the First National Bank of Fort Worth as follows: "Draft Fontaine Martin, No. 11,973 Yours Twenty-sixth protesting check in payment dishonored." On the same day the teller caused the draft to be protested for non-payment by the bank's notary. On the evening of the same day the Canal Bank sent a debit memorandum to the First National Bank of Fort Worth for the amount of the draft, and at the same time returned the original draft. At no time thereafter did the Canal Bank receive any complaint from the Fort Worth bank as to the manner in which the transaction was handled.

Shortly before 3 o'clock in the afternoon of January 29, 1929, a notice was posted on the New Orleans Cotton Exchange announcing the suspension of Fontaine Martin & Co. Two days later, Martin & Co., and the individual members thereof, were adjudicated voluntary bankrupts in the United States District Court for the Eastern District of Louisiana.

George B. Ray filed proof of his claim for $11,974.53 (amount of draft and protest fees) in the bankruptcy proceedings. The claim was allowed and two dividends were paid to Ray by the trustee in bankruptcy, amounting to $1,685.93. Ray also collected on account of his claim the sum of $745.57, being amount on deposit to account of Fontaine Martin & Co. in the Security National Bank of Wichita Falls.

After the answer was filed, plaintiff, by supplemental petition, credited his claim with the amounts in question, thereby reducing it to $9,540.13.

Plaintiff seeks to impose liability on the defendant bank on either of two grounds, namely, (1) because when its runner stamped the draft "Paid," the instrument was paid so far as plaintiff was concerned and the bank could not thereafter change the status of the transaction, or (2) if the delivery of the drawee's check to the bank did not constitute payment, the bank, as plaintiff's agent, was guilty of negligence in accepting from the drawee anything but current money in payment of the draft and is indebted to plaintiff for the amount thereof as damages.

■ It is the payment and not the receipt of the check which operates to discharge the obligation, although such payment relates back to the moment of receipt. Langridge v. Dauenhauer, 120 La. 450, 45 So. 387.

■ The mere delivery of the draft and the acceptance of the check by the bank's runner and his marking draft paid with a rubber stamp in accordance with the customary method of handling such transactions did not constitute payment and was no evidence of payment. 22 Am. & Eng. Enc.Law, p. 569, par. 13.

The surrender of the draft (if it be considered as having been surrendered) did not affect the matter one way or the other. 22 Am. & Eng.Enc.Law, p. 572, par. "d."

■ The leaving of the draft by the bank's runner at the office of Martin &

Co. was clearly only provisional, pending payment of the check which he received at the time. National Bank of Commerce v. Chicago, B. & N. R. R. Co., 44 Minn. 224, 46 N.W. 342, 560, 9 L.R.A. 263, 20 Am. St.Rep. 566; Inter-State National Bank v. Ringo, 72 Kan. 116, 83 P. 119, 3 L.R.A. (N.S.) 1179, 115 Am.St.Rep. 176.

The check was not given and received as absolute payment of the draft. It was not perforated nor marked paid by the Canal Bank. The entries on the books of the bank were merely evidence of conditional payment of the draft. Inter-State National Bank v. Ringo, supra.

▮ Plaintiff's charge of negligence is not supported by the record. The Canal Bank acted promptly and in conformity to the customary and established mode of handling such transactions. No loss was suffered by the plaintiff because of anything the bank did or failed to do. Plaintiff was in no worse position than he would have been if the bank had exacted cash instead of accepting the check.

Martin & Co., the drawee, was without sufficient funds to honor plaintiff's draft when it was presented. The company's bank account was largely overdrawn, and there was still a large debit balance against the company when it went into bankruptcy a few days later.

Plaintiff's draft was promptly reclaimed from the drawee and returned to plaintiff, thereby giving plaintiff every opportunity to protect his interest. As a result of the prompt attention of the defendant bank, the plaintiff was enabled to seize the bank account of Martin & Co. in Wichita Falls and to prove his claim, with the resulting dividends, in his debtor's bankruptcy proceeding.

The rule limiting the liability of the collecting bank only to the loss occasioned by its negligence is stated in Mitchie on Banks and Banking (Permanent Edition) Vol. 6, p. 110, § 65 as follows, viz.:

"Where a note has been surrendered in exchange for a check, has, upon the dishonor of the check been recovered without its validity or security having been in any way impaired, there would seem to be no reason why the bank should be liable at all to the owner of the note, unless to the extent of any actual loss that might have been occasioned by its act."

A full discussion of the subject, with citation of the pertinent authorities, is contained in the case of Inter-State National Bank v. Ringo, supra. In that case a bank holding a note for collection surrendered it to the maker in exchange for his worthless check upon another bank, but, upon the dishonor of the check, regained possession of the note and returned it to its principal. The decision in the case exonerated the bank from liability, upon the ground that the acceptance of the substituted paper did not, under the circumstances disclosed, operate to damage or prejudice the owner of the note intrusted to the bank for collection.

We find nothing in the authorities cited by plaintiff to warrant a judgment in plaintiff's favor under the facts and circumstances shown in this case.

For the reasons assigned, the judgment appealed from is affirmed.