HAMITER, Justice.
Abry Brothers, Inc., instituted the instant suit to recover from Ruth Tillman an alleged balance due of $1104.50 for the moving of, and for certain construction work performed on, a building owned by such defendant, all in accordance with a written, unrecorded contract entered into by those parties. Plaintiff also sought recognition and enforcement of a timely recorded and reinscribed lien against the property for the labor and materials used.
The defendant, in her answer, pleaded payment.
The trial judge rendered a personal judgment in favor of plaintiff and against the defendant for the amount claimed. Further, he recognized the labor and material lien and ordered that the property be sold in due course to satisfy the claim.
On appeal, the Court of Appeal of the Fourth Circuit affirmed the judgment. 148 So.2d 804. Thereupon, the defendant, in connection with her application for a rehearing, filed in that court a plea of prescription of one year to the personal action (it being based on LRS 9:4812) and also an exception to the court’s jurisdiction ratione materiae as to the in rem action. The rehearing was denied.
On the petition of defendant we granted certiorari. 245 La. 65, 156 So.2d 605. And, following the lodging of the transcript, she *348 pleaded here the prescription of one year to the in rem demand, it being predicated also on LRS 9:4812.
Undoubtedly, under the holding of this court in Lumber Products, Inc. v. Crochet, 244 La. 1060, 156 So.2d 438, the prescription of one year pleaded against the in rem action is meritorious. According to the transcript the lien claim of plaintiff was timely recorded on September 12, 1960; but, although it was reinscribed within a year thereafter, this suit for its enforcement was not brought until October 11, 1961 — more than one year from the initial recordation.
In this connection LRS 9:4812 provides: “When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, * * * when a contract has been entered into but has not been recorded, * * * then any person furnishing service or material or performing any labor on the said building * * * may record in the office of the clerk of court or recorder of mortgages * * * a copy of his estimate or an affidavit of his claim * * * which recordation * * * shall create a privilege upon the building or other structure and upon the land upon which it is situated * * *. The said privilege, recorded as aforesaid, shall constitute a privilege against the property for a period of one year from the date of its filing, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege * * And a majority of this court in the Lumber Products, Inc. v. Crochet case held, in effect, that the one year time limit provided for in the quoted portion of the said section is a period of peremption within which a furnisher of labor or materials must bring his in rem civil action for the lien’s enforcement (as was not done here), and that a timely rein-scription does not suspend or interrupt the running of that period. (The author of this opinion disagreed with that conclusion and still entertains the same view. However, since the result reached in such case does bear on the merchantability of titles to immovables he now feels compelled to abide by the conclusion until it is changed by legislative action.)
Plaintiff’s contention that it is entitled to the privilege under the articles of the Louisiana Revised Civil Code (particularly numbers 3249 and 3272), rather than under the provisions of the Louisiana Revised Statutes, cannot be sustained. LRS 9:4817 states: “The manner and method of creating and preserving the privileges specified in this Sub-part are exclusive.” And this provision is but a repetition of Section 16 of Act 298 of 1926 (this Act is the source of such Sub-part) which also provided for the repeal of “all laws and parts of laws inconsistent with the provisions of this act, as well as laws or parts of laws on the same subject matter, including all provisions of the Revised Civil Code of Louisiana inconsistent herewith.”
Having concluded that plaintiff has no labor or material lien on the property of the defendant, we find it unnecessary to consider her exception to the court’s jurisdiction ratione maleriae as to the in rem action.
 The defendant’s plea of prescription of one year to the in personam action is groundless. The basis for this pleading is the assertion that the demand is one brought under that part of LRS 9:4812 which creates a personal action against the owner of a property on which labor or materials have been furnished. But the section states: “ * * * Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal right of action against *349 the owner for the amount of his claim for a period of one year from the filing of his claim, which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof. * * * ” Thus, the provisions have no bearing on the rights of a person, as between himself and owner, when he has a contract with such owner — as in this case. Obviously, it was intended to benefit only those persons who dealt with the contractor or sub-contractor and had not acquired any contractual rights directly against the owner — that is, when there was no privity between the furnisher of labor or material and such owner. While we think that the above quoted language is plain, the sentence following it absolutely excludes any other interpretation. It recites: “This shall not interfere with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent.” Here, the personal demand of plaintiff is founded solely on its written agreement with the defendant. (Italics ours.)
The contract, a typewritten one under which the plaintiff undertook to perform services for the defendant, contains (among others) the following stipulation:
“This work to be done for the sum of $2,300.00.
“Payments: $1,300.00 when house is at the new site, and balance with two post dated of $500.00 each of Mrs. Mary R. LeBlanc dated June 14 June 28th.”
The portion which we have italicized was inserted with ink in the handwriting of the defendant and was initialed by Herman A. Abry. The post dated checks (transferred on the contract’s execution) were signed by a Mrs. LeBlanc (a third party) ; and the defendant, to whom they were payable, endorsed them in blank on the reverse side. When the plaintiff completed its work it presented the checks for payment. But they were returned, there having been insufficient funds in Mrs. Le-Blanc’s account with which to pay them. (Italics ours.)
The defendant contends that the giving and acceptance of the checks constituted payment (whether they were good or not), she insisting that the aforequoted portion of the written contract represented that they were to be considered as an absolute settlement and a discharge of her debt to plaintiff. For this reason she objected to any and all evidence concerning the dishonor of the checks and the intention of the parties.
While we know of no case in this court in which the exact factual situation has been involved prior to this litigation, we have previously recognized the almost universally accepted principle, as stated in 40 American Jurisprudence, page 763, verbo Payment, Section 72, that: “With the exception of a few jurisdictions, the authorities are unanimous in supporting the rule that giving of a draft or bank check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the draft or check is accepted on condition that it shall be paid. * * * The debt is not discharged until the check is paid, or the check is accepted at the bank at which it is made payable. * * * And it is held that the rule applies to obligations arising out of immediate transactions as well as to the payment of antecedent debts. In case the check is not honored on presentation, the original indebtedness for which it was given is not discharged, and the creditor may recover on such indebtedness, without relying on the liability on the check. * * * ” See Nielsen v. Planters Trust and Savings Bank of Opelousas, 183 La. 645, 164 So. 613 and Ray v. Canal Bank and Trust Company, 186 La. 547, 173 So. 101.
Although we have been unable to find any Louisiana decisions dealing with checks *350 of third persons, the general rule elsewhere seems to be the same as that with regard to accepting checks of the debtor himself. See 40 American Jurisprudence, page 766, verbo Payment, Section 76. Moreover, as indicated in that citation, the use of the word “Payment” in connection with the transaction in which the check was accepted is of slight evidentiary significance on the question of whether the instrument was intended to be absolute payment. And on page 769 of Section 79 of the same text it is stated: “ * * * The intention of the parties prevails in determining whether the delivery and acceptance of a note, check, or draft drawn by the debtor or by a third person are to be treated as payment in themselves, or as payment conditional upon the honoring of the paper of the drawee, and such intention usually should be determined by the jury as a question of fact. An agreement that a check is taken in absolute payment is not implied from the mere fact that the instrument is accepted by the creditor from the debtor, or from the giving, at the time of the delivery of the check, of a receipt acknowledging payment of the debt, or from the marking of the evidences of indebtedness as ‘paid’. * * * ” See also Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, Tuckel et al. v. Jurovaty, 141 Conn. 649, 109 A.2d 262 and 70 C.J.S. verbo Payment §§ 105 and 116, pages 316 and 328.
The two Court of Appeal cases relied on by defendant, Lake Charles Feed Company, Inc. v. Sabatier, 14 La.App. 233, 125 So. 318 and Richard v. Blair et al., 20 So.2d 577, do not support her contention. In fact, both recognize the principle of law above stated. Particularly, in the Lake Charles Feed Company case the court permitted the plaintiff to recover a debt due him that had been paid with a check but which could not be collected because the bank had closed before collection could be effected. Therein, the following was said: “The question, then, in its final analysis, is whether the check or bank exchange, issued by the Iota Bank, constituted a payment notwithstanding the fact that such check or bank exchange was not paid. There is no express agreement shown in the evidence to that effect, and to hold to the affirmative of that proposition seems inequitable and illogical. No statute law or jurisprudence is pointed out to sustain such a conclusion.”
The contractual language relied on by defendant, standing alone, is not sufficient in our opinion to establish an agreement on the part of plaintiff to accept the checks of Mrs. LeBlanc as absolute payment. Consequently, it was proper for the court to hear evidence to explain the intention of the parties with respect to the effect of the checks’ acceptance.
We have examined such evidence and have found no error on the part of the district court and the Court of Appeal in their finding that there was no intention that the checks should serve as absolute payment. Not only did Mr. Herman A. Abry (who had negotiated the contract with the defendant) categorically deny any such intention, but his conclusion is also supported by the actions of the defendant herself. Firstly, when she transferred the checks to him she endorsed them in blank — not “without recourse”. Secondly, upon their being dishonored by the bank Abry immediately notified the defendant of such fact; whereupon, she picked up the checks from his office and attempted collection herself, thereby giving evidence of a feeling of continuing obligation in the matter. And, incidentally, even up to the time this suit was tried she had not returned them to the plaintiff.
For the reasons assigned the judgments of the district court and the Court of Appeal are amended by deleting therefrom that portion which recognizes and orders the enforcement of the plaintiff’s lien and privilege; and, as amended, the judgments are affirmed. Costs of this court shall be paid by the plaintiff, while all other costs shall be paid by the defendant.