286 So.2d 469 (1973)
FRANKLIN PRESS, INC., Plaintiff-Appellant,
v.
NATIONAL DIVERSIFIED CORPORATION et al., Defendants-Appellees.
No. 9533.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied January 4, 1974.
Writ Refused February 8, 1974.
*470 Foye L. Lowe, Jr., Baton Rouge, for plaintiff-appellant.
Charles S. McCowan, Jr., and Donald E. Bradford, Baton Rouge, for defendant-appellee Strahan.
John E. Miller, Baton Rouge, for defendants-appellees Pennington, Magee, Johnson and Forbes.
Before SARTAIN, TUCKER and WATSON, JJ.
SARTAIN, Judge.
This is an appeal by plaintiff from a judgment of the district court rejecting its claim against defendants for $3,706.87 allegedly representing the value of services performed by plaintiff for National Diversified Corporation (National).
Plaintiff originally filed suit on March 3, 1972 against National Diversified Corporation and Clifton Strahan, a shareholder and former officer and director of National. Defendant-Strahan answered the suit but National failed to answer. On April 7, 1972 a default judgment was confirmed against National and that judgment is not at issue on this appeal. Plaintiff amended its petition on June 9, 1972 to add five additional individuals as co-defendants, all of whom were directors of National. One of these individual defendants was later dismissed from the suit.
The transactions out of which this suit arises began in April of 1970 when defendant-Clifton Strahan became an officer and director of National. In June of 1970 National had plaintiff perform certain printing work at a cost of $3,706.87, which is the amount sued for. On August 14, 1970 Clifton Strahan sold to National a certain piece of property with a building situated thereon located at 9255 Florida Boulevard in the city of Baton Rouge, Louisiana. The total sale price recited in this act of sale was $175,000.00. The property was burdened with two encumbrances at the time of the sale. There was a first mortgage on the property held by the Baton Rouge Savings and Loan Association in the amount of $50,000.00 which had a balance due of $41,285.57. The Baton Rouge Savings and Loan Association also held a second mortgage in the amount of $12,500.00 with a balance due thereon of $11,971.40. As part of the terms of the sale National was to assume payment of the first mortgage, while Strahan was to pay the balance of the second mortgage. Mr. Strahan was to receive $37,714.43 in cash plus a second mortgage note of $96,000.00. With regard to the cash portion of the purchase price, National gave Strahan an $8,000.00 check, a $4,714.43 check, a $5,000.00 check, and a $10,000.00 check. The balance was to be paid to Strahan with $10,000.00 worth of National stock.
This cash portion of the purchase price was never fully paid. The $8,000.00 check was cashed and the money was received by Strahan. The $10,000.00 worth of stock was sold to Strahan. However, the remaining $19,714.43 represented by the other *471 three checks was never paid because the checks were not honored when presented by Strahan.
On September 16, 1970 Mr. Strahan submitted his resignation as an officer and director of National. This resignation was accepted on October 31, 1970 at a Board of Directors meeting. Mr. Strahan was not present at this meeting.
On October 5, 1970 Mr. Strahan demanded payment by National of the notes due at the Baton Rouge Savings and Loan Association and of the three unpaid checks. As a result of these demands on October 31, 1970 at the Board of Directors meeting the directors of National authorized a dation en paiement by the corporation of the property to Mr. Strahan. On November 2, 1970 the dation was executed. The dation recites that the conveyance of the property to Strahan was made in consideration for the $96,000.00 mortgage note held by Strahan. The instrument also recites that the conveyance by voluntary deed was made in lieu of foreclosure proceedings.
For all practical purposes the corporation became defunct after this transaction and ceased doing business. National had outstanding accounts with several creditors, including the plaintiff, on which National owed numerous sums of money.
By this suit plaintiff sought to hold Strahan liable as an officer, director and shareholder of National for allegedly receiving assets of the corporation in defraud of the rights of the other corporate creditors. Plaintiff also sought to impose liability on the other individual defendants on the grounds that they participated in or failed to object to the alleged unlawful and fraudulent distribution of corporate assets to an officer and shareholder of the corporation in defraud of the other creditors' rights.
The trial court held that the dation to Strahan was not in defraud of the other corporate creditors' rights and dismissed plaintiff's claim against him. The claims against the other individual directors were also rejected on the grounds that no fraud or wrongdoing was proved against them in authorizing this transaction.
Plaintiff contends that the trial court erred in refusing to impose liability on the part of both Strahan and the other individual defendants.

LIABILITY OF STRAHAN
Plaintiff asserts that by virtue of the dation made to Mr. Strahan its rights as a creditor of National were impaired. Plaintiff argues that Strahan, as both a shareholder and creditor of National, received an unlawful beneficiary status to the detriment of the other creditors of the corporation, and thus should be held liable to the corporate creditors for any amounts he so received. L.R.S. 12:93, subd. D.
We note initially that at the time of the transaction complained of Mr. Strahan was no longer an officer or director of National. However, he was a stockholder in the company. Mr. Strahan was also a secured creditor of the corporation. He held a vendor's lien and privilege which was reserved in the August 14, 1970 act of sale and also had a second mortgage on the property.
In order for plaintiff to recover from defendant-Strahan it must show that its rights as a creditor of National were injured by the dation made to Strahan. We find, as did the judge a quo, that plaintiff has failed to show how its rights as a creditor of National were impaired by this transaction.
As pointed out above, the property was originally sold to National for $175,000.00. The act of sale recites that $37,714.43 was to be paid to Strahan in cash. National was to assume the $41,285.57 balance due on the first mortgage held by the Baton Rouge Savings and Loan Association. Strahan was also given a second mortgage on the property in the amount of $96,000.00. Strahan received $8,000.00 in cash and *472 $10,000.00 worth of stock in the company. The remaining portion of the cash payment was never made. The three remaining checks given to Strahan totaling $19,714.43 never cleared the bank.
Defendant-Strahan sets forth in his brief claims totaling some $173,240.69 which he alleges were owed to him by National at the time of the dation. Strahan asserts that in exchange for these claims and cancellation of the vendor's lien and privilege and the second mortgage he accepted the dation of this property to him. Strahan argues that as a secured creditor for these various amounts the dation to him by National cannot be seen to have prejudiced or unlawfully impaired the rights of the plaintiff, an unsecured creditor of the corporation.
Plaintiff argues that since the act of sale recites that the $37,714.43 in cash was actually paid, then the only portion of the price for which Strahan was a secured creditor was the $96,000.00 credit portion of the sale price represented by the second mortgage. Thus, plaintiff contends that National, in effect, conveyed to Strahan this piece of property which it had purchased for $175,000.00 for only $96,000.00 resulting in the withdrawal from the other creditors of National whatever amount the property might have brought at a foreclosure sale over and above the amounts owed the secured creditors.
It is true that when a vendor accepts and acknowledges receipt of the cash portion of the purchase price in the act of sale he is not entitled to a vendor's lien and privilege to cover that amount even though in reality only part of the cash was actually paid. Abat v. Nolte, 6 Mart. (N. S.) 636 (1828); Durham v. Heirs of Daugherty, 30 La.Ann. 1255 (1878). However, as aptly pointed out by the trial judge in oral reasons for judgment, if the secured creditors of National had foreclosed on the property, which was the only asset of the corporation, their claims would have taken the entire assets of the company, thus leaving no money to pay off the claim of plaintiff or the claims of any of the other unsecured creditors.
Examining the figures in a light most favorable to the plaintiff and assuming that the property was actually worth $175,000.00 on November 2, 1970, the date of the dation, if there had been a foreclosure and judicial sale with the property bringing in two-thirds of its value at the sale, or $115,500.00, there still would not have been enough money left over to satisfy the claims of the unsecured creditors. Strahan had a $96,000.00 second mortgage. In addition National owed $41,285.57 on the first mortgage held by the Baton Rouge Savings and Loan Association which National had assumed in the act of sale of August 14, 1970. It is well settled that where the payment of a sum of money due by a vendor is assumed by a purchaser as part of the sale price, the creditor whose debt is assumed is entitled to claim the vendor's lien and privilege when seeking payment for his debt. De L'Isle v. Succession of Moss, 34 La.Ann. 164 (1882); Citizens' Bank v. Succession of Cuny, 38 La.Ann. 360 (1886). Thus, the secured claims against this property amounted to at least $137,285.57, which figure would leave a deficiency of some $21,785.57 still owed to the secured creditors after the hypothetical sale of the property at two-thirds of its original sale price.
In addition we note that plaintiff failed to put forth any evidence to show the value of this property as of November 2, 1970, the date of the dation. To presume that the property would bring more at a judicial sale than the amounts owed on it would be speculation on our part outside of the evidence contained in this record.
Plaintiff seeks to impose liability upon Strahan as a shareholder who received an unlawful distribution of the corporate assets. Plaintiff relies on L.R.S. 12:93, subd. D which provides that a shareholder who receives an unlawful distribution of corporate assets is liable to *473 corporate creditors in an amount not exceeding the amount so received. Our answer to this contention is twofold. First, while Mr. Strahan was a shareholder of the corporation, the property he received by virtue of the dation was conveyed to him in his capacity as a secured creditor of the corporation and was not a distribution to him in his capacity as a stockholder. Secondly, the dation cannot be seen as an unlawful distribution in view of the lack of proof that the other corporate creditors were injured or their rights impaired thereby.
Therefore, we find no error in the rejection by the trial court of plaintiff's claim against defendant-Strahan.

LIABILITY OF THE DIRECTORS
Plaintiff contends that the trial court erred in failing to hold liable the remaining individual defendants for the alleged unlawful distribution of corporate assets.
These individual defendants were directors of National and had attended the October 31, 1970 meeting of the Board of Directors. It was at this meeting that the resolution was adopted permitting the dation of the property to Strahan. Each of these individual defendants either voted in favor of the resolution or failed to dissent therefrom.
Plaintiff seeks to impose liability on these directors under the provisions of L. R.S. 12:92, subd. D which statute provides that directors of a corporation who knowingly or without the exercise of reasonable inquiry vote in favor of any unlawful distribution of the corporate assets can be held jointly liable to the corporation and the corporate creditors in an amount equal to the unlawful distribution.
We find no evidence in this record to indicate that these directors did anything fraudulent or unlawful when they voted to approve the dation to Strahan. As stated by the trial judge: "There was just no money to go around and they were trying to at least reduce the amount of the indebtedness the best way they could."
In support of its contention that the dation to Strahan was an unlawful distribution of corporate assets, plaintiff cites the case of Fudickar v. Inabnet, 176 La. 777, 146 So. 745 (1933). In that case the directors and stockholders of a corporation engaged in an extrajudicial liquidation of the corporation and distributed the entire assets of the corporation among themselves. The directors and stockholders of the corporation were held liable for this distribution of assets to themselves without prior payment of the outstanding corporate debts and liabilities.
In the case at bar the directors of National authorized a dation en paiement of the corporate assets to Mr. Strahan who was a stockholder and former officer in the corporation. Mr. Strahan was also a secured creditor of the corporation whose security was returned to him by the dation as payment of the indebtedness owed to him by the corporation. In the Fudickar case the directors and stockholders who received the corporate assets were not secured creditors of the corporation.
In the case of Daly v. Opelousas Insurance Agency, Inc., 181 La. 89, 158 So. 631 (1934), several minority stockholders filed suit to compel appointment of a receiver for a corporation which had transferred all of its assets via a dation en paiement to its principal creditor for unremitted insurance premiums. In refusing to grant the relief sought the Supreme Court observed: "It appears that the officers of the corporation were representative business men and did the best they could with a bad situation..." (158 So. at p. 633).
In the instant suit the property in question was the only asset of the corporation. The secured claims against National clearly exceeded its assets and the directors did the only thing they could do to avoid foreclosure proceedings. There is no evidence *474 that there was any intent by the directors to defraud the corporate creditors or to grant an unlawful preference. Therefore, we find no error in the dismissal of the claims against these individual defendants by the trial court.

THE REVOCATORY ACTION
Plaintiff's supplementary brief before this court contains several references to the revocatory action. This action grants unto creditors the right to seek annulment of contracts made in derogation of their rights by their debtors. C.C. Articles 1970 et seq.
We note initially that in both its original and amended petitions plaintiff only sought a money judgment. In neither of these pleadings does plaintiff seek a revocation of the dation. In addition, defendant-Strahan argues in brief that any claim under the revocatory action has now prescribed. C.C. Art. 1987.
Pretermitting a discussion of the prescription argument, we note that in order for a creditor to bring an action for revocation there must be injury to the creditor caused by the transaction complained of. As stated in the case of Harman v. Defatta, 182 La. 463, 162 So. 44, 46 (1935):
"A dation en paiment by an insolvent debtor to one of his creditors cannot be set aside merely and solely because the transferee is a creditor and the indebtedness the consideration of the transfer, because it might well be that the transfer was not injurious to the other creditors. Such cases are not within the scope of the revocatory action; one of the elements of which is injury to the other creditors." (citation omitted)
In view of our determination that plaintiff and the other unsecured creditors of National were not injured by the transaction complained of, we find the revocatory action to be inapplicable to this case.
Accordingly, for the above reasons, the judgment of the trial court is affirmed at appellant's costs.
Affirmed.