289 So.2d 229 (1973)
Dianna Kay OXNER
v.
UNION NATIONAL LIFE INSURANCE COMPANY.
No. 9629.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 11, 1974.
Writ Refused April 5, 1974.
*230 Richard J. Dodson, Baton Rouge, for appellant.
John S. White, Jr., Baton Rouge, for appellee.
Before LANDRY, ELLIS and PICKETT, JJ.
ELLIS, Judge:
This is a suit by Dianna Kay Oxner against Union National Life Insurance Company for the proceeds of a life insurance policy allegedly written by the defendant on the life of Paul Ray Oxner, Sr., plaintiff's late husband. After trial on the merits, judgment was rendered in favor of defendant, and plaintiff has appealed.
On November 6, 1971, Paul Ray Oxner, Sr. executed an application to defendant for $15,000.00 of whole life insurance. The application stipulated that payment of the premium was to be under the "12 Check Plan". The agent who handled the transaction was Bobby G. Oxner, Paul's brother. Although a receipt was issued for $23.25, representing "the first monthly premium", the record reflects that no such payment was made. There is testimony that a check in that amount was given to Bobby Oxner, but that he was told it was no good and not to cash it.
The application, without an advance deposit, was submitted to defendant, and a policy, No. 7190056, dated November 29, 1971, was issued and forwarded to Bobby Oxner. He took the policy to his brother's home and obtained twelve checks signed by the plaintiff. The first check was dated November 29, 1971, and the remainder on the 29th day of each succeeding month, through October 29, 1972. The policy was then delivered to plaintiff.
The checks were forwarded to defendant, which deposited the first check on or about December 16, 1971. On December 17, 1971, payment thereof was refused by the drawee bank because of insufficient funds. The check was returned to Bobby Oxner by defendant, and he unsuccessfully attempted to collect on it from his brother. *231 None of the other checks were ever presented for payment, and no notice of cancellation of the policy was ever sent to Paul Oxner.
On January 26, 1972, Paul Ray Oxner, Sr. was killed in an accident. Plaintiff attempted to collect under the policy and payment was refused. This suit followed.
Plaintiff contends that the policy was valid when issued, and, since no notice of cancellation was sent, was still in effect when the insured was killed. Defendant claims that since no premium was ever paid the policy never came into effect.
The premium receipt contains the following language:
"... the Company shall incur no liability until the policy is delivered to the Applicant and the entire premium therefor, less the amount of this receipt, is paid to the Company or its Agent."
The policy contains the following relevant provisions:
"THE CONSIDERATION for this policy is the application, payment of the first annual premium on or before delivery of the policy, and payment of the annual premium on or before each policy anniversary during the lifetime of the Insured until the end of the Premium Paying Period. The annual premium may be paid in installments as provided in "How and Where Premiums Are Payable.
* * * * * *
"HOW AND WHERE PREMIUMS ARE PAYABLE. The policy is based on the payment of premiums annually, but premiums may be paid at semi-annual, quarterly or monthly intervals, if a premium is shown in the Schedule for the desired interval. Each premium after the first is payable on or before its due date, at the Home Office of the Company, but may be paid to an authorized agent in exchange for an official receipt."
The "12 Check Plan" is set forth in the Installment Check Rider as follows:
"In consideration of the Union National Life Insurance Company permitting the Policy numbered above to be paid in monthly installments specified above on the specified day of each month beginning with the agreement date shown above so long as this rider remains in effect, the Policy Owner and/or insured hereby agrees to deposit annually, in advance, with the Union National Life Insurance Company, on this and each ensuing policy anniversary date, during the life of the premium paying period or until the termination of this rider, which ever comes the sooner, twelve (12) properly drawn and valid installment checks for presentation and clearance in the manner stipulated above.
"Notwithstanding any provision in the policy to the contrary, should the Union National Life Insurance Company fail to have any installment check presented for payment, the policy shall not lapse for non-payment of the premiums until thirty-one days after such installment check has been so presented."
It appears from the foregoing that, until "payment" of the "first premium", the policy does not become effective, and there would therefore be no necessity for cancellation thereof. The only question presented by this case is whether or not the giving of the twelve checks under the Installment Check Rider constitutes a payment of the first premium.
It is generally true that the acceptance of a check does not amount to payment of the obligation for which it is given until it is paid by the drawee, unless there is an agreement to the contrary. R. S. 7:189; Work Clothes Rental Serv. Co. v. Dupont Mfrs., Inc., 262 So.2d 807 (La. App. 3 Cir. 1972).
The 12 Check Plan of payment is clearly not one of the alternative modes of payment set forth in the body of the policy. The total of the payments made thereunder *232 for one year is $279.00, slightly in excess of the annual payment, but substantially less than the total to be paid under the semi-annual, quarterly, or monthly plans.
It requires that the checks deposited pursuant thereto be "properly drawn and valid". The first check presented for payment by defendant was not accepted for payment by the drawee, and if there were no other provisions in the rider, we would have no difficulty in holding that the policy never came into effect.
However, the second paragraph of the rider seems to lead to a different conclusion. It provides for an extension of the lapse period should any of the installment checks not be presented for payment. It does not distinguish between the first payment and subsequent payments, as do the other sections of the policy.
As we interpret the language, it says that if an installment check is not timely presented for payment, and if, when finally presented for payment it is not paid, the policy will not lapse for non payment for 31 days after the check is presented. In view of the introductory phrase to the rider, "Notwithstanding any provision in the policy to the contrary," it would appear that this language is just as applicable to the first installment check as to any of the others. Since a policy which has not become effective cannot lapse, it seems logical to conclude, at the very least, that the failure to timely present the first installment check for payment has the effect of breathing life into the policy. It is not beyond the realm of possibility that that check was valid when given, and would have been honored if timely presented.
However, in this case, the check was not deposited by defendant until over two weeks after it was given. Under the second paragraph of the rider, we conclude that the policy was valid until 31 days after the check was presented.
That being the case, the provisions of R.S. 22:177, which require written notice before lapsing a life insurance policy, become applicable, since this policy is one which is based on an annual premium, although it is payable in installments. See Francis v. Universal Life Insurance Company, 223 So.2d 188 (La.App. 3 Cir. 1969); Guillot v. Atlas Life Insurance Company, 245 So.2d 788 (La.App. 4 Cir. 1971). No such notice having been given, the policy was still in full force and effect at the time of the death of the insured.
Since the Installment Check Rider provides that the balance of the premiums due in the policy year in which death occurs be deducted from the benefits due under the policy, a credit of $179.00 must be allowed defendant.
The judgment appealed from is therefore reversed, and there will be judgment herein in favor of Dianne Kay Oxner and against Union National Life Insurance Company for $14,821.00, together with interest from date of judicial demand until paid, and all costs of these proceedings.
Reversed and rendered.