409 So.2d 549 (1981)
T. J. IVY, Sr.
v.
AMERICAN ROAD INSURANCE COMPANY.
No. 81-C-1092.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied February 19, 1982.
Dissenting Opinion March 12, 1982.
*550 Kenneth N. Simmons of Davis & Simmons, Many, for plaintiff-applicant.
William P. Polk, Alexandria, for defendant-respondent.
Dissenting Opinion March 12, 1982. See 410 So.2d 1127.
DENNIS, Justice.
Plaintiff, T. J. Ivy, Sr., instituted suit against American Road Insurance Company seeking to recover the sum of $15,000.00 together with statutory penalties and $10,000.00 attorney's fees, as compensation for the loss of a log hog tractor or a log skidder which was destroyed by fire on April 9, 1980. The defendant's answer acknowledged existence of an insurance policy covering the skidder, but denied coverage due to alleged expiration of the policy on April 8, 1980.
After a judge trial, the trial court ruled that the American policy was in effect at the time of the loss and awarded $9,000.00 plus attorney's fees. American appealed suspensively from the judgment; plaintiff answered the appeal seeking an increase in the award, an increase in attorney's fees and damages for a frivolous appeal. The Court of Appeal reversed the trial court and rendered judgment dismissing the plaintiff's suit. T. J. Ivy, Sr. v. American Road Insurance Co., 398 So.2d 165 (La.App.3d Cir. 1977). We granted certiorari to determine whether the policy had expired by its own terms on April 8, 1980.
The facts are not disputed. Plaintiff purchased the skidder on April 9, 1977. An installment note and chattel mortgage was executed that same day in favor of Ford Motor Credit Company to finance the purchase price. The installments were payable at the rate of $242.12 per month for thirty-six months with the final installment being due on April 17, 1980. In connection with this financing agreement, American insured the equipment under a physical damage policy. The policy contained a provision that the coverage would terminate "... as of the time the installment sales contract is fully paid and discharged." The policy was issued to and held by Ford Motor Credit. Plaintiff was not given a copy, but instead was provided with a brochure describing the coverage generally. The brochure stated that the insurance would be in effect "... so long as the retail installment contract or lease covering it is in effect and held by Ford Credit." Another portion of the brochure provided that "... the equipment involved will be insured from the time you made your purchase or lease until your indebtedness is discharged or lease terminated, the equipment is repossessed, or the insurance is terminated."
On April 3, 1980, plaintiff issued a check for the final installment and mailed it to Ford Motor Credit at its Houston, Texas office. On April 7, 1980, the Federal Reserve Bank in Dallas, Texas endorsed the check on behalf of Ford Motor Credit. On April 10, 1980, the check, which was drawn on the City Bank and Trust Company of Natchitoches, Louisiana, was received and honored by that bank.
The skidder was destroyed by fire on April 9, 1980; after endorsement of the check on behalf of Ford Motor Credit on April 7, 1980, but before the check was received and honored by the drawee bank on April 10, 1980. Thus, resolution of the issue of coverage depends on whether the obligation was discharged on endorsement of the check or on receipt and honor of the check by the drawee bank.
Plaintiff argues that the debt was not paid until the check was accepted by the drawee bank. In support of this argument, he cites provisions of Louisiana's commercial laws embodied in La.R.S. 10:3-409, *551 10:3-410 and 10:4-213.[1] The Court of Appeal analyzed sections 10:3-409 and 10:3-410 and correctly determined that they pertain to the liability of a drawee bank for payment of a check. Section 10:3-409 provides that the drawee bank is not liable for payment of a check until it "accepts" same. La.R.S. 10:3-410 defines "acceptance." Section 10:4-213 relates to the circumstances under which a check is deemed to have been paid by the drawee bank. We agree with the court of appeal that these provisions are not applicable to determine the effect of payment on an underlying obligation.
Our commercial laws were adopted from the Uniform Commercial Code, which contains a section governing the effect of an instrument on the underlying obligation for which it is given. Section 3-409 provides that the obligation is suspended until the instrument is due or if payable on demand until its presentment.[2] This section was specifically deleted from the Louisiana Code. According to the explanatory comment, section 3-409 was deleted because it "tends to conflict with Louisiana law."
According to early civilian authorities, when a creditor accepts payment by check, the debtor is not discharged until the check is cashed. 2 M. Planiol, Traite elementaire de droit civil n. 422A (11th ed. 1939); 1 C. Aubrey et C. Rau, Droit civil francais n. 319 (6th ed. 1946). This rule was later supplemented in the case of Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (1908), which held that a check is a conditional payment, and upon presentation, if honored, the payment relates back to the time the check was delivered to the payee. A fuller statement of this rule is found in The American and English Encyclopedia of Law, the treatise relied upon by the court in Langridge v. Dauenhauer, supra, which provided:
"It is a well settled and universally recognized rule that when a debtor has given *552 his check for the amount of his indebtedness, the prima facie presumption arises that the check was taken merely as conditional, not absolute, payment, and in case the check is not honored upon due presentation the original indebtedness for which it was given continues to exist, and recovery may be had by the creditor without resorting to the debtor's liability on the check .... Of course, the creditor may, by express agreement, accept a check as absolute payment, and where such is the case the right of action on non-payment of the check is upon the check, and not upon the original indebtedness, .... Where the check is in fact paid upon presentation, the payment relates back, so far as regards the extinguishment of the indebtedness, to the time when the check was given." 22 Am. & Eng. Enc. of Law (2d ed.) p. 569, par. 13.
In order to determine whether the doctrine of Langridge v. Dauenhauer, supra, is applicable to the facts of this case, it is necessary to understand the underlying reason for the rule. Observing the everyday dealings of businessmen, the courts found it necessary to consider payment by check to be a "conditional payment" until the check was honored and, once honored, payment was said to relate back to the time of the creditor's receipt of the check. The rule is designed to protect the debtor who tenders payment by check timely, but cannot be certain the creditor will present the check for actual payment before the debt becomes past due. Were it not for the "conditional payment" rule, the timeliness of payment would depend upon the actions of the creditor. Thus, the rule has been applied in cases where the creditor accepted a check, only to argue later, to the detriment of the debtor, that payment was not made on the date the creditor received the check. See, Grimes, Austin and Stark Inc. v. Stark Inc., 347 So.2d 908 (La.App. 3d Cir. 1977) (rent payment held to be timely where check was received by plaintiff-lessor before rent was past due); Ryan v. W. S. Bellows Construction Corp., 151 So.2d 508 (La.App. 4th Cir. 1963) (workmen's compensation judgment held extinguished when judgment-creditor received last payment check); Seliga v. American Mutual Liability Ins. Co., 174 So.2d 878 (La.App. 4th Cir. 1965) (if check given as workmen's compensation payment was cashed, time of making last payment, for purposes of determining limitation period of claim, was date of actual receipt of check); Wright v. Aetna Life and Casualty Co., 360 So.2d 235 (La.App. 1st Cir. 1978) (following rule of Seliga v. American Mutual Liability Ins. Co., supra, in determining workmen's compensation limitation period); cf. Ray v. Canal Bank and Trust Co., 186 La. 547, 173 So. 101 (1937) (receipt of check as conditional payment did not operate to discharge debtor as of date of receipt where check was not honored); Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (1908) (candidate for public office who paid fees assessed against him by check within the legal delay held to have paid timely even though the check was not cashed until after legal delay had run).
The "conditional payment" rule appears to be an equitable precept which constructively alters the date of payment by a debtor when he timely tenders a check which is later honored in order to protect him from unfair treatment by the creditor or anyone who claims he did not pay timely. The question here is whether the rule may be applied against a debtor in order to defeat his claim under an insurance policy which extends coverage until his indebtedness is discharged. Considering its origin and purpose, the rule cannot be asserted against the debtor to defeat his rights. Moreover, even if the rule were applied against him and it were held that his payment related back, his right against the insurer vested upon the occurrence of the loss and could not be unvested by later events. Wharton v. Louisiana Hospital Service Inc., 183 So.2d 133 (La.App. 1st Cir. 1966) cert. denied 184 So.2d 734 (1966); Olinde Hardware and Supply Co., Inc. v. Rogers, 185 So.2d 626 (La.App. 1st Cir. 1966) cert. denied 249 La. 475, 187 So.2d 447 (1966).
For the foregoing reasons, the judgment of the Court of Appeal is reversed and the judgment of the trial court is affirmed.
*553 MARCUS, J., concurs and assigns reasons.
WATSON, J., concurs in the result.
MARCUS, Justice (concurring).
Since plaintiff's indebtedness was not "discharged" until his check was received and honored by the drawee bank on April 10, 1980 (or, alternatively, at the passage of the drawee bank's midnight deadline), I consider that the equipment was insured by defendant at the time of the fire loss (April 9,1980). Accordingly, I respectfully concur.

AMENDMENT OF DECREE UPON APPLICATION FOR REHEARING
PER CURIAM.
In its application for a rehearing, the defendant, American Road Insurance Company, has called our attention to errors committed by the trial court which were not mentioned in the court of appeal opinion because of its complete reversal of the lower court judgment. A rehearing is denied, but our decree is amended for the following reasons.
Although the trial court found that the value of the equipment destroyed by fire was $9,000, it failed to give the insurer credit for the $500 deductible amount provided by its policy. The trial court stated in its opinion that the parties stipulated that statutory penalties and attorney fees would be proper if the court found that the plaintiff's tractor was insured at the time of the loss. The record reflects, however, that the parties only stipulated that, if the trial court should decide that penalties and attorneys' fees are in order, it could assess them without the necessity of an expert witness as to attorneys' fees. After reviewing the record again, we conclude that the award of penalties and attorneys' fees was justified in this case. As we explained in our original opinion and as Justice Marcus noted in his concurring opinion the fire loss occurred before the debt was "discharged," at a time when the equipment was insured, and the subsequent discharge of the debt cannot serve to divest the insured of his rights under the policy. The jurisprudential "conditional payment" rule was developed to protect persons who pay by check, not their creditors. The insurer's failure to make payment in reliance on this rule was "without probable cause [and] shall subject the insurer to a penalty." La.R.S. 22:658.
Accordingly, the court of appeal judgment is reversed and the first decretal paragraph of the trial court judgment is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, T. J. Ivy, and against the defendant, American Road Insurance Company, in the full sum of $8,500, together with legal interest thereon from date of judicial demand until paid, penalties in the full sum of $2,125.00, and 25% upon the total amount due as attorney fees.
As amended, the trial court judgment is affirmed.
COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
MARCUS and LEMMON, JJ., would grant a rehearing on the issue of penalties and attorneys' fees.
LEMMON, J., to assign reasons.

On Application for Rehearing
BLANCHE, Justice.
I would grant a rehearing. According to our holding, the sword does not cut in both directions. Although the indebtedness to Ford was effectively discharged upon its receipt of plaintiff's check on April 7, 1980, the insurance coverage continued and was extended through the date of payment of said check at the drawee bank even though the coverage provision of the policy provided that coverage would terminate "... as of the time the installment contract is fully paid and discharged." Our decision impairs the contractual right of the defendants/insurers under its contract with the insured because it extends coverage beyond the date that the installment contract was paid.
NOTES
[1] § 3-409: Draft not an assignment.

(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.
(2) Nothing in this Section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance. Added by Acts 1974, No. 92 § 1, eff. Jan. 1, 1975.
§ 3-410: Definition and operation of acceptance.
(1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.
(2) A draft may be accepted although it has not been signed by the drawer or is otherwise incomplete or is overdue or has been dishonored.
(3) Where the draft is payable at a fixed period after sight and the acceptor fails to date his acceptance the holder may complete it by supplying a date in good faith. Added by Acts 1974, No. 92 § 1, eff. Jan. 1, 1975.
§ 4-213: Final payment of item by payor bank; when provisional debits and credits become final; when certain credits become available for withdrawal.
(1) An item is finally paid by a payor bank when the bank has done any of the following, which ever happens first:
(a) paid the item in cash; or
(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
(2)(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item....
[2] (1) Unless otherwise agreed where an instrument is taken for an underlying obligation

(a) the obligation is pro tanto discharged if a bank is a drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; or
(3)(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.
(2) The taking in good faith of a check which is not postdated does not of itself so extend the time on the original obligation as to discharge a surety.