GARRISON, Judge.
This is an appeal by plaintiff from a district court judgment which granted de *816 fendant’s permanent injunction and revoked an order of seizure and sale of defendant’s automobile.
Katie M. Dunbar on May 24, 1980, purchased a 1980 Honda Civic automobile, and in connection with that purchase executed a promissory note payable to Ford Motor Credit Company in the amount of $7750.08, payable in forty-eight monthly installments of $161.46. The note was paraphed “Ne Varietur” with a chattel mortgage of the same date. The chattel mortgage includes a confession of judgment and provision for acceleration upon default.
On June 1, 1981, Ford Motor Credit filed a petition for executory process alleging that Dunbar was in default, having failed to fully pay the installment due on April 13, 1981, and the continuing installments due thereafter, thereby maturing the entire unpaid balance of $5,871.13 under the terms of the mortgage. A writ of seizure was subsequently issued and the vehicle was seized. On June 16, 1981, the defendant filed a petition for injunction to arrest the seizure and sale. After hearing on July 7, 1981, the trial court found that at the time the suit was filed on June 1, 1981,
“... the April payment had been paid and the May payment had been tendered to the agent of Ford Motor Credit Company but had been returned and placed in an envelope in the door of the defendant and marked ‘N.S.F.’ By testimony the agent indicated that he was informed by the bank that the defendant did not have sufficient funds in the bank and on this basis rejected the payment.”
The Court concluded that the payment was rejected by the agent improperly, and for that reason granted the injunction restraining the executory process. It is from this ruling that plaintiff appeals.
This court agrees with the analysis of the trial court. Our review of the events leading up to the filing of suit shows that after executing the chattel mortgage Ms. Dunbar had made several late payments. Additionally, in 1980 Ms. Dunbar allowed her automobile insurance to lapse, which was prohibited under the terms of the mortgage. As a result, Ford took out a limited physical damage insurance policy on the automobile and notified Ms. Dunbar on January 15, 1981, that it was adding the cost of the premium to her note, increasing the amount of the installment payments from $161.46 to $201.44. Ms. Dunbar continued to make payments in the original amount, but made a payment of $239.88 by check dated May 10, 1981, as payment of her insurance premiums for six months. Ford Motor Credit accepted this check, thereby excusing Ms. Dunbar’s delinquency as to the past due insurance premiums and making her current through July 13, 1981, with respect to that portion of her monthly installment payment which represented the insurance premium.
Moreover, with respect to the installment payments which Ford Motor Credit alleges were not fully paid by the time suit was filed, the testimony reveals that on May 17, 1981, Ford Motor Credit’s agent, Mike Hurst, went to Ms. Dunbar’s office and received her check for $161.46. Upon leaving her office, Hurst stated he called Ms. Dunbar’s bank and was told there were insufficient funds in Ms. Dunbar’s account to cover the check. Rather than attempting to present the check, he wrote “N.F.S.” (sic) on the envelope containing the check and placed it in Ms. Dunbar’s front door.
The jurisprudence is clear that acceptance of a check does not amount to payment of the obligation for which it is given until it is accepted or paid by the drawee. Oxner v. Union National Life Ins. Co., 289 So.2d 229 (La.App. 1st Cir.1973), writ denied 292 So.2d 243; Work Clothes Rental Service Co. v. Dupont Mfgrs., Inc., 262 So.2d 807 (La.App. 3rd Cir.1972). However, it is equally clear to us that once a check has been tendered to and accepted by a payee in payment of an account, the payee has a duty to present the check for payment before attempting to place the debtor in default. This principle was enunciated in Gulf Motor Lines v. European Agencies, 155 So. 523 (Orleans App.1934), in which the court stated:
*817 “Where a check is accepted in payment of an account although there is no actual payment until the funds are received, still there is a duty in the payee to present the check in due course or to permit it to be presented, and, pending presentation, the fact that the check is in existence constitutes conditional payment which status continues to exist until the check has been presented and is either paid or dishonored.”
The record reveals, in fact, that Ms. Dunbar’s bank accounts did contain sufficient funds to pay the check tendered to Ford Motor Credit, had it been presented for payment.[1] Therefore, the check remained unpaid solely because of Ford Motor Credit’s unfounded belief that the check would be dishonored, without any attempt at presentation. We note, however, that the balance in Ms. Dunbar’s bank account is immaterial; the fact remains that Ford Motor Credit failed to fulfill its duty to present the check for payment before attempting to place her in default on the chattel mortgage.
For these reasons, we agree with the trial court that Ford Motor Credit’s employee acted improperly in returning defendant’s check without having presented it for payment, and we conclude that Ford Motor Credit filed suit prematurely, there being no legal default on the obligation.
The judgment of the trial court is affirmed.
AFFIRMED.

, Defendant’s Exhibits 6 and 8 are computerized printouts of the activity in Ms. Dunbar's checking accounts with the Hibernia National Bank, reflecting a balance on 5/27/81 of 11023.72 in Account No. 35-10-2656-1, and $209.15 in Account No. 32-10-2036-4, the account on which the check in question was drawn.