650 So.2d 1206 (1995)
SECURITY CENTER PROTECTION SERVICES, INC.
v.
ALL-PRO SECURITY, INC., and Louis O. Sepulveda.
SECURITY CENTER PROTECTION SERVICES, INC.
v.
Frank CLEMENT and Henry Burkhardt.
Nos. 94-CA-1317, 94-CA-1318.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 1995.
*1207 Philip K. Jones, Jr., Dena L. Olivier, Liskow & Lewis, New Orleans, for Security Center Protection Service, Inc.
Bruce S. Kingsdorf, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for Frank Clement.
Before BARRY, PLOTKIN and WALTZER, JJ.
PLOTKIN, Judge.
This case requires this court to interpret two provisions of Louisiana's corporation law: La.R.S. 12:55(A), which prohibits a corporation from purchasing or redeeming its shares when it is insolvent or when the purchase or redemption would render it insolvent, and La.R.S. 12:93(D), which imposes liability for corporate debts on shareholders who receive an unlawful distribution of assets. A sub-issue is whether an unlawful distribution of corporate assets can be revoked under La. C.C. art. 2036 and 2041.
Plaintiff Security Center Protection Service, Inc. ("SCPS") appeals a trial court judgment that granted peremptory exceptions of peremption/prescription and no cause of action in favor of defendant Frank Clement. For the reasons that follow, we reverse and remand.
1. Facts
The controversy in this appeal is ancillary to a breach of contract suit filed by SCPS against All-Pro Security, Inc. ("All-Pro") and its president Louis O. Sepulveda; that suit resulted in a July 29, 1992, judgment in favor of SCPS in the amount of $175,220.48.
After that judgment became final, SCPS conducted a judgment debtor examination of All-Pro on October 19, 1992, at which time it learned that All-Pro was insolvent. As a result of information gained in the judgment debtor examination, SCPS filed the instant suit against Clement and Henry Burkhardt, both of who are former shareholders of SCPS.[1] In this suit, SCPS alleges that All-Pro sold all or substantially all of its assets to Alert Income Partners IV, Ltd. in September of 1990, and that the proceeds of *1208 this sale were improperly used by All-Pro in November of 1990 to make payments to Clement and Burkhardt in connection with redemption of their All-Pro stock, a transaction that SCPS claims is prohibited under Louisiana law because it resulted in All-Pro's insolvency.
Burkhardt settled the suit against him. Clement, however, filed peremptory exceptions of failure to join an indispensable party, peremption/prescription, and no cause of action. The trial court denied the exception of failure to join an indispensable party, but granted the exceptions of peremption/prescription and no cause of action without assigning reasons for judgment. SCPS appeals.
SCPS seeks recovery under two different theories: (1) the transactions were unlawful distributions to shareholders under La.R.S. 12:55(A) for which Clement is liable under La.R.S. 12:93(D), and (2) the transactions should be annulled under the provisions of La.C.C. arts. 2036 et seq., which govern revocatory actions.

2. Unlawful distributions to shareholders

The applicable corporations statutes governing this appeal are as follows:
La.R.S. 12:55(A):
A corporation shall not purchase or redeem its shares when it is insolvent, or when such purchase or redemption would render it insolvent, or at a price, in the case of shares subject to redemption, exceeding the redemption price thereof, or when its net assets are less than, or such purchase or redemption would reduce its net assets below, the aggregate amount payable on liquidation upon any issued shares, which have a preferential right to participate in the assets in the event of liquidation, remaining after the purchase or redemption and cancellation of any shares in connection therewith. Subject to the provisions of this subsection, a corporation may purchase its own shares, or redeem its shares subject to redemption, as provided in the following subsections of this section.
La.R.S. 12:93(D):
Every shareholder who receives an unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.
(Emphasis added.) SCPS claims that the distribution to Clement in November of 1990 was an unlawful distribution of assets under the provisions of La.R.S. 12:55(A) because the distribution resulted in All-Pro's insolvency, making Clement, a shareholder, liable to SCPS, a creditor, under the provisions of La.R.S. 12:93(D). The trial judge granted peremptory exceptions of peremption and no cause of action dismissing SCPS's action based on those provisions.

a. Exception of peremption

Under the provisions of La.R.S. 12:93(D), quoted above, SCPS's suit to recover the assets it alleges were unlawfully distributed to Clement under the provisions of La.R.S. 12:55(A) is barred by peremption unless it was filed "within two years of the date on which the unlawful distribution was received." In order to determine whether the trial court properly granted the exception of peremption, we must decide on which of three possible dates the alleged unlawful distribution was received by Clement: November 7, 1990, when Clement received the check from All-Pro; November 9, 1990, when Clement deposited All-Pro's check into his checking account; or November 13, 1990, when All-Pro's bank honored the check. SCPS filed suit on November 12, 1992. Because the two-year peremptive period began to run on the date the distribution was received, the suit was timely filed only if this court finds that the distribution "was received" within the meaning of La.R.S. 12:55(A) on November 13, 1990, when the bank honored the check.
Clement argues that the general, jurisprudentially-created "conditional payment" rule *1209 applies to the instant case; that argument was obviously accepted by the trial court. The "conditional payment" rule provides that "in the absence of a specific agreement to the contrary, a check or draft is a conditional payment; when the instrument is honored on presentation, it constitutes payment as of the date it was received." Smith v. American Mutual Liability Insurance Co., 174 So.2d 878, 879 (La.App. 4th Cir.1965); see also Ford Motor Credit Co. v. Dunbar, 442 So.2d 815 (La.App. 4th Cir.1983).
SCPS argues that the trial court improperly applied the "conditional payment" rule because the policy reasons for the rule do not apply in this case. It cites the following language from Ivy v. American Road Insurance Co., 409 So.2d 549 (La.1981), in support of its position:
In order to determine whether the ["conditional payment"] doctrine ... is applicable to the facts of this case, it is necessary to understand the underlying reason for the rule. Observing the everyday dealings of businessmen, the courts found it necessary to consider payment by check to be a "conditional payment" until the check was honored and, once honored, payment was said to relate back to the time of the creditor's receipt of the check. The rule is designed to protect the debtor who tenders payment by check timely, but cannot be certain the creditor will present the check for actual payment before the debt becomes past due. Were it not for the "conditional payment" rule, the timeliness of payment would depend upon the actions of the creditor. Thus, the rule has been applied in cases where the creditor accepted a check, only to argue later, to the detriment of the debtor, that payment was not made on the date the creditor received the check....
The "conditional payment" rule appears to be an equitable precept which constructively alters the date of payment by a debtor when he timely tenders a check which is later honored in order to protect him from unfair treatment by the creditor or anyone who claims he did not pay timely. The question here is whether the rule may be applied against a debtor in order to defeat his claim under an insurance policy which extends coverage until his indebtedness is discharged. Considering its origin and purpose, the rule cannot be asserted against the debtor to defeat his rights.
Id. at 552 (emphasis added; citations omitted). SCPS argues that, just as the "conditional payment" rule may not be used to defeat the rights of a debtor, it should not be used to defeat the rights of third parties when the policy reasons behind the rule, as described by the Louisiana Supreme Court in Ivy, do not apply.
Further, SCPS claims that the "conditional payment" rule is an exception, rather than the general rule. In support of this argument, SCPS cites the following language from Ivy:
According to early civilian authorities, when a creditor accepts payment by check, the debtor is not discharged until the check is cashed. 2 M. Planiol, Traite elementaire de droit civil n. 422A (11th ed. 1939); 1 C. Aubrey et C. Rau, Droit civil francais n. 319 (6th ed. 1946). This rule was later supplemented in the case of Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (1908), which held that a check is a conditional payment, and upon presentation, if honored, the payment relates back to the time the check was delivered to the payee.
Id. at 552-53 (emphasis added). SCPS's argument that the "conditional payment" rule is an exception to the general rule is also supported by the following language found in this court's decision in Ford Motor Credit Co., 442 So.2d 815:
The jurisprudence is clear that acceptance of a check does not amount to payment of the obligation for which it is given until it is accepted or paid by the drawee.
Id. at 816 (citations omitted).
We find that the trial court erred in applying the "conditional payment" rule and maintaining the peremptory exception of peremption in this case. In reaching this decision, we are guided by the following general principles regarding interpretation of prescriptive/peremptive statutes:

*1210 Under [Louisiana] law, prescriptive statutes are to be strictly construed against prescription and in favor of the claim that is said to be extinguished. Of the two possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted.
Louisiana Health Service v. Tarver, 635 So.2d 1090, 1098 (La.1994) (citations omitted); see also Fontaine v. Roman Catholic Church, 625 So.2d 548, 551 (La.App. 4th Cir. 1993), writ denied, 93-2719 (La. 1/28/94), 630 So.2d 787.
In this case, determination of whether SCPS's cause of action under La.R.S. 12:55(A) and La.R.S. 12:93(D) is barred by peremption depends on a selection between two possible constructions of the rules regarding transfer of funds by check. In other words, the trial court had to choose whether to apply the "conditional payment" rule or the more general rule that payment occurs when the drawee bank honors the check. Despite the above-quoted general principle requiring courts to choose the construction that maintains rather than bars the claim, the trial court improperly chose to apply the "conditional payment" rule, the construction that barred the cause of action.
Applying the construction that maintains rather than bars the claim, we find that the two-year peremptive period established by La.R.S. 12:93(D) commenced to run when All-Pro's bank honored the check to Clement on November 13, 1990, making the suit filed by SCPS on November 12, 1992 timely. Accordingly, we reverse the trial court judgment granting the exception of peremption regarding SCPS's claim under La.R.S. 12:55(A) and La.R.S. 12:93(D).

b. Exception of no cause of action

In addition to granting the peremptory exception of peremption regarding SCPS's claim against Clement under La.R.S. 12:55(A) and La.R.S. 12:93(D), the trial court granted a peremptory exception of no cause of action in favor of Clement regarding those claims.
The Louisiana Supreme Court recently explained the purpose of an exception of no cause of action as follows:
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well pleaded facts in the petition must be accepted as true.
City of New Orleans v. Board of Commissioners, 93-0690, p. 2 (La. 7/5/94); 640 So.2d 237, 241 (citations omitted). The court further explained the standard for granting an exception of no cause of action as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the court of appeal and [the supreme] court should subject the case to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition we follow the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide for relief on any possible theory.
As a practical matter, an exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face *1211 of the petition that there is some insuperable bar to relief. In other words, dismissal is justified only when the allegations of the petition itself clearly demonstrate that the plaintiff does not have a cause of action or when its allegations indicate the existence of an affirmative defense that appears clearly on the face of the pleading.
Id. at p. 28-29; 640 So.2d at 253 (citations omitted).
Thus, in the instant case, this court is required to make a de novo review of SCPS's petitions to determine whether the facts alleged by SCPS, accepted in the light most favorable to SCPS, and with every doubt resolved in SCPS's behalf, are sufficient to support a cause of action against Clement under any legal theory of recovery.
Clement argues that the trial court properly granted the peremptory exception of no cause of action under La.R.S. 12:55(A) and La.R.R. 12:93(D) for two reasons. First, he claims that SCPS failed to allege, and is in fact unable to allege, that All-Pro was insolvent at the time that the sale or redemption was made or that the sale or redemption made the corporation insolvent, as required for an illegal distribution to shareholders under La.R.S. 12:55(A). Second, Clement claims SCPS cannot recover against him under La.R.S. 12:93(D) because he was no longer a "shareholder" in November of 1990. Both of these arguments are based on Clement's contention that his stock was redeemed, not when he received the check from All-Pro in November of 1990, but when he and All-Pro entered a contract for the redemption of his stock on February 6, 1986. At that time, Clement claims, All-Pro issued him a promissory note in consideration for the redemption of the stock. The November 1990 payment, Clement claims, was simply a payment to him as a creditor of the corporation secured by the promissory note. Clement does not contest SCPS's allegation that the November 1990 payment resulted in the insolvency of the company, arguing instead that the payment was simply a payment to a creditor, not a stockholder.
Clement's arguments notwithstanding, an exception of no cause of action is triable on the face of the papers and all well-pleaded facts of the plaintiff's petition are accepted as true. In paragraph 5 of its original petition, SCPS alleged that Clement was either a shareholder or a former shareholder of All-Pro at the time the petition was filed. Further, in paragraph 12, SCPS alleged that "in November 1990, All-Pro ... [paid] Clement the amount of $169,895 in connection with the redemption of All-Pro stock owned by Clement to All-Pro." As Clement points out, paragraph 12 goes on to state that the payment to Clement was pursuant to an agreement executed February 6, 1986. Finally, in paragraph 17, SCPS alleged that "[t]he redemption of its shares by All-Pro as described herein was in violation of Louisiana corporation law in that, among other things, All-Pro was insolvent at the time or was rendered insolvent by the described payments to Clement ... on account of the redemption."
We find that above allegations, when viewed in the light most favorable to SCPS, with every doubt resolved in favor of SCPS, are sufficient to state a cause of action against Clement under La.R.S. 12:55(A) and La.R.S. 12:93(D). The trial judge improperly found that "the plaintiff could prove no set of facts in support of any claim which would entitle [SCPS] to relief." City of New Orleans, 93-0690 at p. 28; 640 So.2d at 253.
This conclusion is supported by a study of the Louisiana jurisprudence interpreting La. R.S. 12:93(D). Although no reported Louisiana decision has addressed the exact issue raised in this case, the result of several reported decisions indicate that SCPS might be entitled to recovery against Clement under the facts alleged by SCPS.
Generally, a plaintiff may prevail under La.R.S. 12:93(D) only if he proves both that an unlawful distribution of assets was made and that the unlawful distribution was made to a shareholder. AMP Service Corp. v. Richard, 419 So.2d 911, 914 (La.1982). The trial court apparently found that SCPS was unable to meet that burden of proof under the facts as alleged in its petitions. We find that conclusion is incorrect for two reasons.
First, determination of when the alleged illegal "distribution of assets" occurred is not *1212 as simple as Clement claims. Indeed, Clement essentially "sold" his stock to All-Pro on February 6, 1986, when he and All-Pro executed the contract for redemption of his stock. However, the fact that ownership of the stock was transferred to All-Pro at the time the contract was perfected does not control when the "distribution of assets" occurred. Because the monies transferred from All-Pro to Clement in November 1990 were admittedly a part of the consideration for the sale of his stock to All-Pro, that transference constitutes a "distribution of assets" under La.R.S. 12:55(A).
Further, Clement's arguments that no illegal distribution of assets occurred in November 1990 rest upon his contention that the phrase "unlawful distribution of assets" could only mean receipt of monies in direct violation of La.R.S. 12:55(A), which prohibits redemption of stock when the corporation is insolvent or when the redemption of the stock would render the corporation insolvent. However, the jurisprudence indicates that the phrase "distribution of assets" as used in La.R.S. 12:93(D) refers to types of transactions other than redemption of stock when the corporation is insolvent or when the redemption renders the corporation insolvent. The fact that SCPS alleged only that Clement was liable under a reading of La.R.S. 12:93(D) in conjunction with La.R.S. 12:55(A) does not prohibit this court from considering whether Clement might be liable under some other theory. As stated in City of New Orleans:
The petition should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide for relief on any possible theory.
93-0690 at p. 29, 640 So.2d at 253.
Generally, the following rule applies to the validity of agreements between a corporation and its shareholders:
The[ ] concerns for fairness on the part of officers, directors or dominant stockholders do not preclude them from becoming bona fide creditors of the corporation, but corporate transactions with them are subject to close scrutiny. But when a payment is made by the corporation on account of a valid debt due an officer or director at a time when the corporation is insolvent it is considered an invalid payment.
Abraham v. Lake Forest, Inc., 377 So.2d 465, 471 (La.App. 4th Cir.1979), writs denied, 380 So.2d 99 and 380 So.2d 100 (La.1980); see also Lopez v. TDI Services, Inc., 631 So.2d 679, 688 (La.App. 3d Cir.1994), writ denied, 94-0864 (La. 6/3/94), 637 So.2d 501; Sea Tang Fisheries, Inc. v. You'll See Sea Foods, Inc., 569 So.2d 992, 996 (La.App. 1st Cir. 1990), writ denied, 572 So.2d 89 (La.1991). Thus, payment of a debt to a shareholder in his capacity as a creditor of the corporation is not necessarily an unlawful distribution of assets. See Franklin Press, Inc. v. National Diversified Corp., 286 So.2d 469, 473 (La. App. 1st Cir.), writ denied, 289 So.2d 155 (La.1974); see also AMP Service Corp., 419 So.2d at 915.
In developing the above principle, the court that decided the Abraham decision quoted the following excerpt from the annotation at 56 ALR 3d 212:
The view seems to be generally accepted that a majority or dominant shareholder or a director may make a loan to the corporation and may accept security for the loan, provided the transaction is fair and in good faith. But in view of the fiduciary status which a majority or dominant shareholder or a director occupies with respect to the corporation and to the other shareholders, such transactions are always open to the closest scrutiny by the courts and the burden is upon the lender to show the inherent fairness of the transaction to all parties concerned.
Several Louisiana cases have considered whether transactions other than those prohibited by La.R.S. 12:55(A) constitute an illegal "distribution of assets" under the provisions of La.R.S. 12:93(D). Most frequently, La.R.S. 12:93(D) has been interpreted to provide recovery to plaintiffs who successfully establish that an alleged illegal transaction was fraudulent. Abraham, 377 So.2d at 470 (citing Peters v. Crochet Homes, Inc., 370 So.2d 651, 653 (La.App. 4th Cir.1979) (transfer *1213 of a corporate asset to a sole shareholder was a simulated transaction, which was an "illegal distribution of corporate assets for which the transferee shareholder [was] individually liable" under La.R.S. 12:93(D)); McGregor v. United Film Corp., 351 So.2d 1224, 1228 (La.App. 1st Cir.1977), writs denied, 353 So.2d 1335 and 353 So.2d 1341 (La.1978) (corporation's transfer of monies to another corporation in payment of a debt owned by sole shareholder of debtor corporation was an unlawful distribution of assets, rendering the shareholder liable to corporate creditors of creditor corporation)).
Of special interest to the instant case is the decision in Pasternack v. Louisiana & Arizona Lands, Inc., 254 So.2d 142 (La.App. 3d Cir.1971), in which the court found that a shareholder was liable under La.R.S. 12:93(D) because he "actively participated in a scheme to sell the corporation assets in such as manner as to place them beyond the reach of the creditors of the corporation and in fraud of the creditors' rights." Id. at 145. The facts from which this conclusion was drawn are as follows:
First, [the shareholder] transferred all stock of the corporation to [third parties]; then [the third parties] had the assets of the corporation transferred to them for the stock; then [the third parties] granted a $300,000 note to [the shareholder] secured by a second mortgage on the land. Thus, instead of a stockholder of the corporation, [the shareholder] became a preferred creditor, and the mortgages exceeded the value of the assets, thereby excluding the possibility of any other creditor obtaining satisfaction of his claim. [The shareholder] indirectly attempted to do what he is prohibited from doing directly. Insofar as the ordinary creditors are concerned, this amounts to an unlawful dividend or distribution of the assets of the corporation. Therefore, [the shareholder] is individually liable to the creditors in accordance with the provisions of La.R.S. 12:93, subd. D.
Thus, the trial court in this case improperly granted the exception of no cause of action to SCPS's action under La.R.S. 12:55(A) and La.R.S. 12:93(D). Following our de novo review, we cannot conclude beyond doubt that SCPS can prove no set of facts in support of any claim that would entitle it to relief. Considering the petition in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, SCPS's petition states a valid cause of action for relief. Accordingly, the trial court judgment granting the exception of no cause of action is reversed.

3. Revocatory action

The applicable revocatory action Civil Code articles governing this appeal are as follows:
La.C.C. art. 2036
An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.
La.C.C. art. 2041
The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.
SCPS claims that the payments to Clement in November of 1990 should be annulled under the above articles. The trial court granted both a peremptory exception of prescription and a peremptory exception of no cause of action regarding SCPS's revocatory action.

a. Exception of prescription

Clement claims that the trial court properly dismissed SCPS's revocatory action because that the action is barred by the one-year prescriptive period established by La. C.C. art. 2041 and the action was filed more than a year after the payments were made.
The petition in the instant case was filed on November 12, 1992; thus, it was filed more than a year after the payment was made on November 13, 1990. However, SCPS alleged in paragraph 17 of its first supplemental and amending petition that it "did not know, nor could it have known, of the Clement and Burkhardt Stock Redemptions until it attempted to enforce the judgment *1214 rendered in its favor on July 29, 1992 against All-Pro and Sepulveda." Because the judgment was filed within a year of the time that SCPS learned or should have learned of the act, SCPS says, its suit was timely filed.
Not so, says Clement, who claims in briefs to this court that SCPS's petition was not only barred by prescription, but was outside the three-year peremptory period established by La.C.C. art. 2041, because the relevant "act" for purposes of this article was the contract between Clement and All-Pro for the redemption of the stock that was executed on February 6, 1986.
Once again, the standard controlling review of a peremptory exception of prescription requires that this court strictly construe the statutes "against prescription and in favor of the claim that is said to be extinguished." Louisiana Health Service, 635 So.2d at 1098; Fontaine v. Roman Catholic Church, 625 So.2d at 551. Further, because this case involves two possible constructions, we must adopt the one that maintains enforcement of the claim or action, rather than the one that bars enforcement. Id.
In order to determine whether the one-year prescriptive period for SCPS's revocatory action began to run on February 6, 1986, or on November 13, 1990, this court must decide whether the "act" referred to in La. C.C. art. 2036 is the execution of the contract for the redemption of the stock or the payment of the monies. Relative to that issue, comment (d) to La.C.C. art. 2036 states as follows:
The term "act" in this Article encompasses contracts, acts of payment, and any "contrivance" employed by an obligor to defeat his obligee's rightful claim.
The possible construction that maintains prescription in this case is that the "act" SCPS seeks to revoke is the November 13, 1990 payment. This construction is also consistent with the allegations of SCPS's petition. Thus, because the petition was filed within a year of the date that SCPS either "learned or should have learned" of the payment, the petition was timely filed. The trial court's granting of the exception of prescription to SCPS's revocatory action is accordingly reversed.

b. Exception of no cause of action

Determination of whether the trial court properly granted the exception of no cause of action as to SCPS's revocatory action is also dependent on whether the "act" that SCPS seeks to annul is the February 6, 1986, contract between Clement and All-Pro to redeem his stock or the November 1990 payment to Clement.
The elements of a revocatory action are as follows: 1) insolvency of the debtor, 2) injury to the creditor, 3) intent to defraud the creditor, and 4) a preexisting or accrued indebtedness. Opelousas Production Credit Asso. v. B.B.& H., Inc., 525 So.2d 91, 93 (La.App. 3d Cir. 1988). Clement claims that SCPS's petition fails to state a cause of action because it fails to allege the fourth element listed above. Clement claims that the "act" is the February 6, 1986, contract that pre-existed All-Pro's contract with SCPS that was executed in 1989. Thus, Clement claims, no revocatory action lies because All-Pro's indebtedness to SCPS was not a "preexisting or accrued indebtedness" at the time of the "act" that SCPS seeks to revoke.
We find no merit in Clement's argument. As noted above, comment (d) to La. C.C. art. 2036 states that the word "act" encompasses "acts of payment." Thus, SCPS has stated a cause of action against Clement under the revocatory articles. The exception of no cause of action as to SCP's revocatory action is hereby reversed.

4. Conclusion

For the foregoing reasons, the trial court judgment granting the peremptory exceptions of peremption/prescription and no cause of action in favor of defendant Clement and against plaintiff SCPS is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BARRY, J., concurs.
*1215 BARRY, Judge, concurring with reasons.
The trial court evidently utilized the "conditional payment" rule to maintain the exception of peremption. The rule is "an equitable precept which constructively alters the date of payment by a debtor when he timely tenders a check which is later honored in order to protect him from unfair treatment by the creditor or anyone who claims he did not pay timely." Ivy v. Road Insurance Company, 409 So.2d 549, 552 (La.1981). The Court held that the conditional payment rule would not be used to defeat the debtor's rights under an insurance policy extending coverage until the indebtedness was discharged. The Court stated: "Considering its origin and purpose, the rule cannot be asserted against the debtor to defeat his rights." Id.
I agree that the conditional payment rule should not be applied in this case. The discussion should end there. There is no need to discuss general principles relating to the strict interpretation of prescriptive statutes. Under the general principle that a debtor is not discharged until the check is cashed, SCPS's suit was filed within the peremptive period.
NOTES
[1] This suit has been consolidated with SCPS's suit against All-Pro.