SAMUEL, Judge.
Plaintiff was an insured under a group life insurance policy issued by defendant to her employer. In this suit she seeks benefits for total and permanent disability under the provisions of the policy, which disability allegedly results from the effects of a “conversion” or “traumatic” neurosis. There was judgment in the trial court awarding plaintiff $108.00 per month for a period of 60 months and defendant has appealed.
*512 It is not disputed that the policy provides for benefits at the rate of $108.00 -per month for a period of 60 months when plaintiff is totally and permanently disabled 'by bodily injury or disease and will thereby presumably be continuously prevented from engaging in any occupation or performing any work for compensation of financial value. Nor is there any dispute ■over the fact that the basis for plaintiff’s ■ claim, “conversion” or “traumatic” neurosis, can constitute a “disability by bodily injury or disease” as those words are used in the policy. The only issue here involved is one of fact, that is, whether or not plaintiff is suffering from a neurosis which incapacitates her to the extent set forth in the policy provisions relative to -total and permanent disability.
In addition to plaintiff’s counsel, who •gave brief testimony relative to the demand made by him on the defendant, only four witnesses, all for the plaintiff, testified at the trial. They were: plaintiff, her mother, Thomas Barcelona (a close friend •of the plaintiff and her husband), and Dr. William R. Sorum. Defendant offered no witnesses but did file in evidence reports by Dr. Irving Redler and Dr. Richard Levy, respectively orthopedic and neurological specialists, with the stipulation by counsel for both litigants that each doctor ■would testify in accordance with his report if placed on the witness stand. The re-ports are to the effect that the examinations made by these doctors revealed no • orthopedic or neurological disability.
Plaintiff, a typist who was 26 years of -age at that time, was injured in a traffic •accident involving a collision between a -truck and a bus in which she was a passenger. She suffered what her treating •orthopedist, Dr. D. S. Condie, described in •connection with her claims for accident and health benefits as a severe contusion and sprain of the right shoulder and later as a '“whiplash” injury to the neck. She saw Dr. Condie the morning following the accident and almost daily thereafter for about -.five weeks when he discharged her as being able to return to work. She did return to work but stopped after about three months and again saw, and was treated by, Dr. Condie almost daily over a period of several months. He gave her additional diathermy, prescribed traction and recommended the use of a “Thomas” or cervical collar. In an attempt to determine the cause of what plaintiff described as severe pains about the head and neck, and on the advice of Dr. Condie, she saw Dr. Soboloff, also an orthopedist, for a further opinion. In addition she saw Dr. Nabos, another orthopedist, Dr. Fiorello, who examined her eyes, Dr. Winokur, who administered physical therapy, and Dr. Sorum.
The testimony of plaintiff’s two lay witnesses, her mother and Barcelona, essentially is to the effect that prior to. the accident plaintiff enjoyed good health, was busy, active, happy, interested in various participating sports and social affairs, and a neat, tidy housekeeper, but that after the accident there was a marked change in her behavior and manner. She became depressed and very nervous, was no longer active, refused to go out socially, would frequently cry and complain of pain, usually in the area of her neck, and neglected all of her household chores, showing no interest therein.
The plaintiff testified as follows: After returning to work following the accident she began to suffer from terrible pains about the head, neck and arms, together with a stiffness of the neck. She has worn the cervical collar since beginning to use it, although upon the advice of her doctors she has tried to do without it, unsuccessfully except for short periods of time. When not wearing the collar she feels as though she is going to “keel over” and becomes sick and nauseated. Plaintiff is constantly nervous, frequently has an upset stomach with vomiting, has recurring nausea, and her arm sometimes feels as though it is paralyzed. She feels she is no longer able to work as a typist or otherwise.
*513 Dr. Sorum, a psychiatrist, first saw the plaintiff about a year after the accident. At that time she had received treatment from Dr. Condie, had returned to and attempted to remain at work, and was wearing the cervical collar.
Dr. Sorum’s testimony is as follows: Plaintiff complained to him of an increase in soreness with accompanying headaches, stiff neck and nausea as well as trouble with her right arm. During the first visit she was very depressed and cried considerably, blaming the accident for having caused a complete change in her life, and spoke of the tremendous change in activity she had experienced since the accident. He saw her at his office on several occasions and then transferred her to Touro Clinic where he continued to treat her until the time of the trial, approximately 40 visits in all. He tried several types of drugs, all of which failed and then tried hypnosis, which proved to be of little value for the reason that her tension was too great. He then tried a series of new drugs which, in some instances, resulted in an initial but unsustained improvement. Among those drugs were Taractan, Prozine, Compazine and Thorazine. He was concerned about plaintiff becoming too dependent upon the cervical collar and warned her of that danger but was met with plaintiff’s complaint that the pain was unbearable without the collar. He felt that she could do her housework only while wearing the collar for the reason that she was actually afraid of breaking her neck and producing serious damage or even death if she did anything strenuous, even bending over, while not wearing the collar. Because of the pain she either has, or believes she has, and the fear just mentioned, plaintiff is afraid of moving her neck without the collar’s protection. He was sufficiently concerned about her condition to ask the court that she leave the court room while he was giving his testimony. He found that plaintiff was profoundly depressed and despondent and that her problem was emotional rather than physical. He was certain that she was not a malingerer and that, as far as she was able, she had made and was making a sincere effort to be a cooperative patient and get well. He diagnosed her condition as severe depressive reaction and anxiety hysteria and found that this condition had continued to deteriorate. On his last examination just a few days before trial her condition was worse than it had been on any other occasion he had seen her. He was of the opinion that her condition was caused by the accident, that she was totally disabled from a psychiatric point of view, and presumably would be continuously prevented from engaging in any occupation or work for compensation due to that condition.
In view of the fact that all of the evidence contained in the record and bearing upon the particular question at issue before us, particularly the expert testimony of the treating psychiatrist, supports plaintiff’s position and stands uncontra-dicted, we are unable to say there is any error in the trial court’s finding of fact. See O’Neal v. French Unique Laundry & Cleaners, La.App., 149 So.2d 431; Singleton v. W. L. Richardson & Son, Inc., La. App., 95 So.2d 36.
Defendant contends, alternatively, that the trial court’s judgment should be modified so as to limit the period in which the monthly installments shall be paid to the time during which the plaintiff is totally and permanently disabled. We agree with this contention. The policy provides that disability installments shall be paid monthly during the continuance of such disability and that the Society shall have the right at any time during the first two years after receipt of proof of total and permanent disability, and thereafter once a year, to require proof of the continuance of such disability. The judgment should not be couched in absolute terms so as to require unconditional payment for the full period of 60 months; it must be modified so as to cover only the period during which *514 plaintiff’s total disability continues. See Melancon v. Provident Life & Accident Ins. Co., 176 La. 1055, 147 So. 346.
For the reasons assigned, the judgment appealed from is amended so as to restrict the payment of monthly installments to that period during which plaintiff is actually totally and permanently disabled, but not to exceed 60 months in all. As thus amended, and in every other respect, the judgment appealed from is affirmed; costs of this appeal to be paid by the defendant-appellant.
Amended and affirmed.