**LAKEWAY COMPANY, Appellant,**

v.

**Alfonso D. BRAVO Del Villar et al., Appellees.**

**No. 1243.**

Court of Civil Appeals of Texas, Tyler.

Feb. 1, 1979.

Rehearing Denied Feb. 22, 1979.

Mike Willatt, Fisher & Willatt, Austin, for appellant.

Barry Bishop, Clark, Thomas, Winters & Shapiro, Austin, for appellees.

SUMMERS, Chief Justice.

This appeal is from a summary judgment granted in favor of appellees.

Appellees, Sr. and Sra. Bravo, citizens of Mexico, brought suit against appellant, Lakeway Company, for specific performance of a contract for sale of land, that is for delivery of a deed to the property in question, and Lakeway Company counterclaimed for $8,188.45, the balance which it alleged was due as purchase money under the contract.

Both appellees and appellant filed their respective motions for summary judgment. The trial court granted the appellees' motion for summary judgment and denied the appellant's motion, from which action appellant has appealed. We affirm.

By a written contract (drawn by Lakeway and executed in both Spanish and English versions) dated July 31, 1976, the Bravos contracted to buy and Lakeway Company agreed to sell a certain Lakeway lot located in Travis County, Texas. The contract stipulated the total purchase price in the following manner "US$25,820.00 (MEX$322,750.00)." The down payment was described to be "US$5,000.00 (MEX$62,500.00)." At the time the contract was signed, the Bravos paid, by check, the down payment of 62,500 Mexican pesos which was equivalent to $5,000.00 (U.S.). This down payment in pesos was accepted by Lakeway.

On August 18, 1976 (which was a Saturday), Lakeway received Mr. Bravo's check drawn on Banco National de Mexico payable to Lakeway Company in the amount of 260,250 pesos, at that time the equivalent of U.S. $20,820.00. This was for the second and final payment under the contract. Lakeway deposited the check at its Austin bank on Monday, August 20, 1976, and the check was honored and cleared the Banco National de Mexico on August 30, 1976. On August 31, 1976, the Mexican government devaluated the peso. Because of the devaluation, the exchange of pesos for U.S. dollars yielded only $12,631.55, $8,188.45 less than the original U.S. dollar amount for the second payment. Lakeway retained both the down payment and second payment but refused to convey title to the property in question, claiming that the Bravos had not made full payment.

Appellant has predicated its appeal upon two points of error which contend that the trial court erred (1) in granting summary judgment in favor of appellees, and (2) in refusing to grant summary judgment in favor of appellant.

The contract provided that it is to be interpreted in accordance with the laws of Texas and the United States of America, and the provisions pertinent to this appeal provide that:

"1. Seller [appellant] agrees to sell and Buyers [appellees] agree to buy for a total purchase price of US$25,820.00 (MEX$322,750.00) the following described property in Lakeway Section 18, as recorded in Plat Book 3, Page 385 of Travis County clerk records, Lot Number 2060.

"2. Buyers have paid US$5,000.00 (MEX$62,500.00) as a down payment and agree to pay to the seller, at 1200 Lakeway, Austin, Texas 78746, U.S.A. the balance within . . . (15) days of the date of this contract. Seller agrees to notify Buyers in writing of the total amount due in Mexican pesos if a change in the official exchange rate occurs prior to such payment.

"3. When the total purchase price is paid, Seller agrees to convey said property to Buyers by a general warranty deed, subject to all subdivision restrictions and covenants and easements of record (including those recorded in the deed records of Travis County, Texas for the section in which this homesite is located). Also, Seller agrees to furnish Buyers with a policy of title guaranty insurance covering said property."

Appellant contends that the intention of the parties, as set forth in the contract, was for a total purchase price of $25,820.00; that how that was paid, whether in dollars or pesos, was immaterial so long as the result to seller was the required number of dollars; and that the peso figure in parenthesis was simply for the convenience of the buyer to let him know how many pesos would be required to buy the property. It urges that this intention is supported by the fact that the contract provides that "Seller agrees to notify Buyers in writing of the total amount due in Mexican pesos if a change in the official exchange rate occurs prior to such payment." We agree with these contentions.

In its conclusion, however, appellant takes the position that when the Bravos delivered the check on August 18, 1976, that Lakeway accepted the check not only on the condition that it be honored but also on the condition that it produce the required number of dollars. We disagree. As pointed out by appellees, the amount of dollars for the purchase price was absolute, but the amount of pesos could vary if seller gave written notice to buyers of a change in the official exchange rate prior to payment (pursuant to paragraph 2 of the contract). Appellees further respond that the mode of payment could be in dollars or pesos; that the down payment was in pesos with no objection from Lakeway; that on August 18, 1978, the Bravos delivered to Lakeway their check drawn upon their Mexican bank payable to Lakeway Company in the amount of 260,250 pesos; that there had been no change in the exchange rate and that such amount was the correct amount due for the final payment under the contract; that such check was received by Lakeway without objection; that when one takes a check, the check is accepted with one condition, and one condition only, that is that the check be honored for payment; and that once the check is honored and paid in due course the payment relates back and becomes absolute as of the date of the delivery of the check to payee. We agree.

In the instant case a check payable in the correct amount of pesos for final payment under the contract was delivered to Lakeway by the Bravos on August 18, 1976; such check was received by Lakeway without objection; said check was honored and cleared appellees' bank account on August 30, 1976, prior to the devaluation of the peso which occurred on August 31, 1976; and when honored and paid in due course, the payment became absolute and related back to the date of delivery of the check on August 18, 1976; and as of said date of

delivery it produced the specified value in dollars and satisfied the terms of the contract.

■ When a check is accepted as conditional payment and is paid in due course, it is generally held that the payment thereon becomes absolute and relates to the date of delivery of the check. *Muldrow v. Texas Frozen Foods, Inc.,* 157 Tex. 39, 299 S.W.2d 275, 277 (1957); *Texas Mutual Life Ins. Ass'n v. Tolbert,* 134 Tex. 419, 136 S.W.2d 584, 590 (1940); Texas Business and Commerce Code, sec. 3.802(a)(2), V.T.C.A.; 70 C.J.S. Payment § 24, p. 235; 60 Am.Jur.2d, Payment, sec. 11, p. 618.

We further disagree that any problem was caused by the late payment on August 18, 1976, instead of on August 15, 1976. There was no change in the exchange rate and there is no pleadings or evidence showing any loss by reason of the late payment.

In light of what we have held above we do not believe that the cases cited in appellant's brief regarding optional payments or the case of *Guaranty Trust Co. of New York v. Henwood,* 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1939), are applicable to the case at hand.

The judgment of the trial court is affirmed.