CUTRER, Judge.
Plaintiff, T. J. Ivy, Sr., was the owner of a piece of heavy equipment used in the logging industry known as a log hog tractor or a log skidder (skidder). The skidder was destroyed by fire on April 9,1980 and plaintiff brought suit against defendant, American Road Insurance Company (American) for recovery of the fire loss. American denied coverage.
The trial court ruled that the American policy was in effect at the time of the loss and awarded $9,000.00 plus attorney’s fees. American appealed. The plaintiff answered the appeal seeking an increase in the award, an increase in attorney’s fees and damages for a frivolous appeal. We reverse.
The facts are not in dispute:
Plaintiff purchased the equipment on April 9, 1977. An installment note and chattel mortgage was executed in favor of Ford Motor Credit Company to finance the purchase price. The installments were payable at the rate of $212.42 per month for 36 months with the final installment being due on April 17, 1980.
Pursuant to his usual practice, plaintiff issued a check for the final installment, which check was dated April 3, 1980. The check was mailed to Ford Motor Credit at its Houston, Texas, office. The Federal Reserve Bank in Dallas, Texas, endorsed the check on behalf of Ford Motor Credit on April 7,1980. The check, which was drawn on the City Bank and Trust Company of Natchitoches, Louisiana, was received and honored by that bank on April 10, 1980.
We recapitulate the sequence of events as follows:
April 3, 1980 - Date of check and mailing to Ford Motor Credit.
April 7, 1980 - Ford Motor Credit received the check by this date.
April 9, 1980 - Fire loss occurred.
April 10, 1980 - Check honored and paid by the Natchitoches Bank.
Defendant’s policy contained a provision that the policy would terminate
“... as of the time the installment sales contract is fully paid and discharged. ”
The issue presented on appeal is upon what date was the installment sales contract “fully paid and discharged.” To resolve the issue we must answer the question of whether the obligation was discharged on April 7, 1980 (the date that Ford Motor Credit received the check) or April 10, 1980 (the date the Natchitoches Bank honored the check).
The trial court, in finding coverage, held:
“.. . a debt payable by check is not paid until the bank upon which the check is drawn actually receives and honors the check.”
we find that the trial court erred in this conclusion. The trial court failed to give consideration to the retroactive, effect of the payment by the Natchitoches Bank upon the underlying obligation for which the check was given.
The law is well established that a check is a conditional payment and once the check has made its commercial cycle back to the drawee bank where it is finally accepted and paid, such payment relates back to the time the check was delivered to the payee (creditor).
In the early case of Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (1908), the court was faced with the issue of whether a candidate for office had paid his qualification fee timely. A check was given for the qualification fee at the time the candidate filed his qualification papers, October 11, 1907. The check was processed and paid on October 25, 1907. The law required that payment of the qualification fee must be made at the time the candidate filed for qualification (October 11, 1907). The contention was that such payment was not *167 made until the check was paid by the drawee bank on October 25, 1907.
In resolving this issue the court held as follows:
“ ‘ When the check is, in fact, paid, upon presentation,’ say the authorities, ‘the payment relates back, so far as regards the extinguishment of the indebtedness, to the time when the check was given.’ 22 A & E Enc. of Law (2d Ed.) 573, and authorities there cited.” (Emphasis ours.)
This reasoning has been consistently followed by the courts. See Wright v. Aetna Life & Cas. Co., 360 So.2d 235 (La.App. 1st Cir. 1978); Seliga v. American Mutual Liability Insurance Co., 174 So.2d 878 (La.App. 4th Cir. 1965); Richard v. Blair, 20 So.2d 577 (La.App. 1st Cir. 1945). Other jurisdictions follow this rule.[1]
This court in the case of Grimes, Austin & Stark, Inc. v. L. Stark, Inc., 347 So.2d 908, 909 (La.App. 3rd Cir. 1977), held as follows:

“In the sub-lease contract, there was no provision as to the manner in which rent was to be paid. Thus, the receipt of the check by plaintiff was a conditional payment of rent. Seliga v. American Mutual Liability Ins. Co.. 174 So.2d 878 (La.App. 4th Cir., 1965). We quote from Seliga:

‘... And in the absence of a specific agreement to the contrary, a check or draft is a conditional payment; when the instrument is honored on presentation, it constitutes payment as of the date it was received. Ray v. Canal Bank & Trust Co.. 186 La. 547, 173 So. 101; Langridge v. Dauenhauer. 120 La. 450, 45 So. 387; Mancuso v. Equitable Life Assurance Soc. of U. S., La.App, 151 So.2d 511.
The purpose of this established jurisprudential rule is both logical and apparent. It is commonplace in today’s highly commercialized society to discharge obligations by the use of checks. Many obligations require that payments be made timely or at certain times. Examples are installment notes, insurance premiums, rental payments under lease agreements and many others. The rule, that payments for the discharge of such an obligation by check occurs at the time the check is received, even though it may be honored by the drawee bank at a later date, protects the debtor from such claims as possible additional interest, penalties or breach of contract for untimely payment. The rule is designed to allow the debtor to effectuate timely payment by check. If we ruled otherwise it would make the timeliness of payment depend upon the actions of the creditor. Thus a debtor who paid by check would not be assured that his payment was timely even though the check was delivered timely.
In this case, unfortunately, the effect of the rule deprives the debtor of insurance coverages. We must, however, maintain our long-standing rule and preserve the stability of contract obligations which are paid by check.
Plaintiff cites provisions of commercial laws which became effective January 1, 1975. Plaintiff cites LSA-R.S. 10:3-409, 10:3 — 410 and 10:4-213.[2]
Sections 10:3-409 and 10:3-410 do not govern the effect of payment by check on an underlying obligation. These articles, as *168 their titles reflect, pertain to the liability of a drawee bank for payment of a check. In summary, it provides that the drawee bank is not liable for payment of a cheek until it “accepts” same. “Acceptance” is defined in LSA-R.S. 10:3-410.
Section 10:4-213 relates to the circumstances under which a check is deemed to have been paid by the drawee bank. In the case at hand, the issue is not when the check is paid by the drawee bank, but we are concerned with the effect of such payment upon the underlying obligation or indebtedness, for which the check was delivered to the creditor.
It is interesting to note that the Uniform Commercial Code, from which our Commercial Laws emanated, contained a section dealing with the specific subject matter that we are concerned with herein. The title to that article reads “Effect of Instrument on Obligation for which it was given.”[3] A strong argument for plaintiff’s position may have been made if that section of the Uniform Commercial Code had been incorporated into Louisiana’s Commercial Laws, but that section was specifically omitted from our code. This omission is specifically referred to in our code.
The comment explaining the omission states that LSA-R.S. 10:3-802 was deleted because it “tends to conflict with Louisiana law.” This section, which dealt specifically with the effect of instruments on underlying obligations for which it was given, was deleted from our law, and since our 1975 commercial laws contain no other provision dealing with this subject matter, the longstanding line of jurisprudence, heretofore discussed, is effective and applicable.
We conclude that the installment contract was fully paid and discharged on April 7,1980, the date by which Ford Motor Credit had received the check. Since the fire occurred two days later, no coverage existed at the time of the loss.
For the reasons set forth, the judgment appealed from is therefore reversed and plaintiff’s suit is dismissed. Plaintiff-appel-lee is to pay costs of both the trial and this appeal.
REVERSED AND RENDERED.

. In Pearson Grain Company v. Plains Trucking Company, Inc., 494 S.W.2d 639 (Texas Court of Civil Appeals 1973), the court held as follows:
“It is settled law in Texas that while mere delivery of a check does not operate to discharge a debt in the absence of an agreement to that effect, payment by the check becomes absolute when the check is paid in due course and relates to the delivery date of the check. Muldrow v. Texas Frozen Foods, 157 Tex. 39, 229 S.W.2d 275 (1957).”
See also Lakeway Co. v. Bravo, 576 S.W.2d 926 (Texas Court of Civil Appeals 1979); Flint v. United States, 237 F.Supp. 551 (D.Idaho 1964).

. § 3 409: Draft not an assignment.
(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.
(2) Nothing in this Section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance. Added by Acts 1974, No. 92, § 1, eff. Jan. 1, 1975.
§ 3 410: Definition and operation of acceptance.
*168 (1) Acceptance is the drawee’s signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.
(2) A draft may be accepted although it has not been signed by the drawer or is otherwise incomplete or is overdue or has been dishonored.
(3) Where the draft is payable at a fixed period after sight and the acceptor fails to date his acceptance the holder may complete it by supplying a date in good faith. Added by Acts 1974, No. 92 § I, eff. Jan. 1, 1975.
§ 4-213: Final payment of item by payor bank; when provisional debits and credits become final; when certain credits become available for withdrawal.
(1)An item is finally paid by a payor bank when the bank has done any of the following, which ever happens first:
(a) paid the item in cash; or
(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
(2)(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item....

. (1) Unless otherwise agreed where an instrument is taken for an underlying obligation
(a) the obligation is pro tanto discharged if a bank is a drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; or
(3)(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.
(2) The taking in good faith of a check which is not postdated does not of itself so extend the time on the original obligation as to discharge a surety.