### Elaine M. FULLER v. BANKNORTH MORTGAGE COMPANY, Banknorth Group, Inc. and First Vermont Bank & Trust

[788 A.2d 14]

No. 01-133

October 29, 2001. Plaintiff Elaine Fuller appeals the judgment of the superior court in favor of defendant Banknorth Mortgage Company on her claim for fraud. Fuller argues that the trial court misapplied the law concerning fraudulent concealment and erroneously determined that a release she signed covered the actions of Banknorth. We affirm.

Fuller argues that the trial court erred as a matter of law and does not contest the factual findings of the court. The undisputed factual findings of the court are as follows. On September 23, 1993, Fuller entered into a purchase and sale agreement to buy a nine-room house in Concord that dated from roughly 1860. It was her first purchase of a home. The purchase and sale agreement was contingent on, among other things, Fuller receiving financing for the purchase. It contained no building inspection contingency, however.

The following day, Fuller contacted a loan originator for Banknorth about financing for the home. In the course of their meeting, the loan originator discussed the various options available to Fuller as a low-income, first-time home buyer, including applying for a Vermont Housing Finance Agency (VHFA) loan guaranteed by the federal Farmers Home Administration (FHA). Fuller filled out a loan application and wrote a check to cover both the application fee and a loan appraisal. The following week, the loan originator informed Fuller that her loan application was being placed with the VHFA, and the loan would be guaranteed by the FHA if approved. She also requested that Fuller send her additional monies to cover a building inspection which was required as part of the loan application process with VHFA and FHA. The loan originator explained that VHFA and FHA needed information on the value of the security as well as estimates regarding needed repairs, funds for which would be potentially included in the loan amount. Fuller was initially upset that she had to pay for what she viewed as a "second inspection," but agreed when the loan originator

explained that it was a necessary part of the loan application process.

Fuller requested to the loan originator that she be present at the inspection so she could receive the estimates for the repairs. Unfortunately, the realtor who had shown Fuller the house set up the inspection and not the loan originator. The realtor did not notify Fuller of the inspection, and, therefore, she was not present for it. The inspection was performed on October 18, but without either the electricity connected or the water turned on. The inspector filled out a form indicating whether certain items were in "good," "average," or "poor" condition, and included additional remarks. The report was provided to the loan originator who forwarded it to the VHFA/FHA. She also discussed the results with the inspector who indicated he thought that the items marked "poor" should be repaired prior to the transaction occurring.

The loan originator contacted Fuller and informed her that both the appraisal and inspection had been completed. She told her that certain items needed to be repaired before a loan would be approved. Fuller and the seller executed an addendum to the purchase and sale agreement that extended the closing date and provided that the needed repairs would be done before closing. Fuller took the fact that the loan approval process would go forward once the needed repairs were done to mean that the house had "passed" the building inspection. She never requested a copy of the inspection report.

On November 19, FHA provided the first-conditional commitment for the loan, conditioned on the necessary repairs being done. The closing was scheduled for January 24, 1994. Fuller and several of her friends performed many of the repairs themselves because of the short timeline. The day before the closing, the appraiser reappraised the property. The appraisal still exceeded the loan amount,

and the loan was approved with the closing occurring as scheduled. As is the custom with such loans, the loan was assigned to VHFA, and thereafter Banknorth merely serviced the loan on behalf of VHFA.

In the ensuing months, Fuller started to experience numerous problems with the home, including problems with the wiring, questions about the soundness of the foundation, and problems with the well pump. Because of the expenses related to these problems, Fuller had trouble meeting her monthly loan payments. She also was without work or income for a period of time following her purchase of the house. Eventually, she negotiated an agreement with VHFA in which the organization accepted a deed in lieu of foreclosure, because of her inability to make her loan payments. She vacated the home in February 1996.

Fuller initially brought suit against the building inspector for negligence. Fuller later added Banknorth as a defendant and stipulated to the dismissal of her claims against the building inspector, eventually adding a claim for fraud against Banknorth. The parties proceeded to trial only on the fraud claim. Following a bench trial, the trial court entered judgment in favor of Banknorth. Fuller appeals to this Court.

Fuller's primary argument is that, despite the trial court's conclusion that Banknorth did not affirmatively misrepresent the results of the building inspector's report, the trial court failed to adequately address the alternative basis for a claim of fraud: fraudulent concealment. Fuller argues that Banknorth failed to disclose fully the details of the inspection results, thereby fraudulently inducing her to enter into the loan transaction. She argues that she was misled into believing, by Banknorth's silence, that the inspection found that the electrical, water and wastewater disposal systems were in good working order when, in fact, those systems were never

really examined because neither the electricity nor the water were turned on.

Our case law establishes that, in order to state a claim for fraud based on fraudulent concealment, a plaintiff must demonstrate: (1) concealment of facts, (2) affecting the essence of the transaction, (3) not open to the defrauded party's knowledge, (4) by one with knowledge and a *duty to disclose*, (5) with the intent to mislead, and (6) detrimental reliance by the defrauded party. See *Lewis v. Cohen*, 157 Vt. 564, 568, 603 A.2d 352, 354 (1991) (outlining the elements of fraud by affirmative misrepresentation); *Silva v. Stevens*, 156 Vt. 94, 102-03, 589 A.2d 852, 857 (1991) (listing the elements of fraud and the elements of fraudulent concealment); *Sutfin v. Southworth*, 149 Vt. 67, 69-70, 539 A.2d 986, 988 (1987) (describing fraudulent concealment and explaining that it is tantamount to an affirmative misrepresentation). We have stressed the essential nature of the duty to disclose to a claim for fraudulent concealment in numerous cases. *Roy v. Mugford*, 161 Vt. 501, 510, 642 A.2d 688, 693 (1994); *Silva*, 156 Vt. at 103, 589 A.2d at 857; *Sutfin*, 149 Vt. at 69-70, 539 A.2d at 988; *White v. Pepin*, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989). Additionally, in order to establish a claim for fraud, a plaintiff must meet a higher burden of proof: that of clear and convincing evidence. *Hughes v. Holt*, 140 Vt. 38, 41, 435 A.2d 687, 689 (1981). We will assume for the sake of argument that Fuller managed to establish all of the other elements of fraudulent concealment, contrary to the trial court's conclusions. But with the exception of the bald statement on the first page of her brief that "although the inspection was required by [VHFA and FHA] to process the loan, [she] was an intended third party beneficiary,"[1] Fuller's brief fails to address or acknowledge the requirement that Banknorth have a duty to disclose.

The trial court noted that Banknorth had not assumed a role beyond that of mortgagee. Furthermore, the court determined that the inspection was undertaken for the benefit of VHFA and FHA to determine whether to approve Fuller's loan application and on what conditions. The trial court went on to conclude that in doing so, Banknorth was not providing any guarantees about the condition of the home to Fuller. Cf. *Baker v. Surman*, 361 N.W.2d 108, 111 (Minn. Ct. App. 1985) ("[A] buyer cannot rely upon an FHA appraisal as a warranty of the value or condition of the home. The primary and predominant objective of the FHA appraisal system is the protection of the government and its insurance funds.").

In similar circumstances, we have held that a lender does not take on any duty to the borrower when it undertakes an investigation for its own benefit. *Hughes*, 140 Vt. at 40, 435 A.2d at 688 (on claim for negligence against mortgagee bank in performing its appraisal, mortgagor failed to establish that bank owed mortgagor duty of care); see also *McGee v. Vermont Fed. Bank*, 169 Vt. 529, 530, 726 A.2d 42, 44 (1999) (mem.) (noting, on claim that bank breached a fiduciary duty by failing to disclose to mortgagors that insurance required by bank had lapsed, "record revealed nothing but a debtor-creditor relationship between the parties" and fiduciary relationship was not born of such an arrangement);

lishes her as a third-party beneficiary. "The determination of whether a party may be classified as a third-party beneficiary, as opposed to an incidental beneficiary, is based on the original contracting parties' intention." *McMurphy v. State*, 171 Vt. 9, 16, 757 A.2d 1043, 1049 (2000) (examining contract to determine whether plaintiffs' daughter was a third-party beneficiary of agreement).

---

[1] Fuller does not include a copy of the agreement between Banknorth and the building inspector that she claims estab-

*Rzepiennik v. U.S. Home Corp.*, 534 A.2d 89, 93 (N.J. Super. Ct. App. Div. 1987) ("neither the record nor law nor reason supports an inference that [mortgagee], by demanding a certificate of occupancy and inspection certificates, undertook any duty or obligation to inspect the property on behalf of the [mortgagors] or to warrant its condition"). We noted in *Hughes*, "[a]lthough there are cases where a bank goes beyond its role as mortgagee and gets involved in a capacity beyond that of a mere lending agency so that *a duty relationship analogous to that of a seller or broker may come into being*, this is not such a case." *Hughes*, 140 Vt. at 40, 435 A.2d at 688 (emphasis added; internal citation omitted). Given that the trial court made a similar determination in this case, we discern no basis for imposing a duty to disclose on Banknorth.[2] Cf. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56-57 (Ct. App. 1991) (noting when bank's role does not extend beyond that of conventional lender of money, bank owes no duty such as a "duty to disclose its knowledge that the borrower's intended use of the loan proceeds

represents an unsafe investment"); see also *Raynor v. United States*, 604 F. Supp. 205, 207 (D.N.J. 1984) (on claim that mortgage company breached its contractual and fiduciary duty by misrepresenting that it had done a thorough inspection of home, court noted that mortgage company inspected property solely for the purpose of determining its adequacy as collateral and therefore plaintiff failed to demonstrate it violated any duty to her); *Block v. Lake Mortgage Co.*, 601 N.E.2d 449, 451-52 (Ind. Ct. App. 1992) (on constructive fraud claim, court affirmed trial court's conclusion that no fiduciary relationship existed between debtor and creditor).

In the absence of a duty to disclose on the part of Banknorth, Fuller cannot prevail on a theory of fraudulent concealment. Therefore, the trial court properly granted judgment in Banknorth's favor on Fuller's claim for fraud.

Because we determine that the trial court did not err by failing to enter judgment in Fuller's favor on her claim of fraud, we need not address her argument that the trial court erred in ruling that a release Fuller executed in favor of VHFA also covered Banknorth. We note, however, that Fuller appears to misconstrue the statement, interpreting it to give Banknorth a defense against her fraud claim. In fact, the trial court merely noted "[Fuller]'s release of the VHFA's agents operated to release [Banknorth] from any claims in this action *that accrued after the assignment of the loan*," i.e., any claims that accrued post-closing. Fuller's claim for fraud was based on the acts of Banknorth's loan originator prior to the closing and prior to the assignment of the loan to VHFA. Furthermore, earlier in its decision, the trial court explicitly states, "[p]rior to [the] assignment . . . [Banknorth] was not acting as an agent of the VHFA in processing [Fuller]'s application." If Banknorth was not acting as an agent at the time of the alleged fraud, the court

---

[2] Courts have noted the policy considerations that oppose the imposition of a duty of care on lenders in the mortgage context. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 59 (Ct. App. 1991); *Denison State Bank v. Madeira*, 640 P.2d 1235, 1243-44 (Kan. 1982). If mortgagees assumed a duty to the mortgagor, heretofore not contemplated, when they undertook such evaluations of collateral as building inspections and appraisals, it would increase the risk undertaken by the mortgagees and ultimately result in an increase in the cost of applying for a mortgage. See *Nymark*, 283 Cal. Rptr. at 59; *Denison*, 640 P.2d at 1243-44. The cost increase would raise the barrier to home ownership.

could not hold that the release covered the claim.

*Affirmed.*